**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FOREST GLEN PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-1006C |
| v. | ) | |
| | ) | (Judge Wolski) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiff's claims for lack of subject matter jurisdiction. In support of this motion, we rely upon the pleadings, the following brief, and the materials contained in the appendix ("A__") filed in support of our motion.

**DEFENDANT'S BRIEF**

**ISSUE PRESENTED**

Whether this Court has jurisdiction over plaintiff's claims where they are not founded upon a contract between plaintiff and the United States.

**STATEMENT OF THE CASE**

**I. Nature Of The Case**

Plaintiff, Forest Glen Properties, LLC ("Forest Glen"), seeks damages for breach of contract and unjust enrichment arising from the failure of defendant, the United States, acting through the Department of Housing and Urban Development ("HUD"), to pay certain amounts allegedly due pursuant to a Housing Assistance Payments ("HAP") contract between HUD and the owner of property located in Cleveland, Ohio known as Lakeview Gardens. Forest Glen

contends that it is the assignee of the property owner and succeeded to the property owner's rights under the HAP Contract.

## II. Statement Of Facts

In 1984, HUD entered into a HAP contract with Lakeview Gardens, Ltd. governing the lease of certain dwelling units to lower-income families in accordance with Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f (the "Act"). A10. Pursuant to the HAP contract, HUD agreed to make housing assistance payments upon behalf of lower-income families to the owner of the Lakeview Gardens property "to enable the [f]amilies to lease [d]ecent, [s]afe, and [s]anitary housing pursuant Section 8 of the Act." Id..

The term of the contract was 15 years. A11. For a first set of 20 units to be rented, the effective date of the HAP contract was July 23, 1984. For a second set of 20 units to be rented, the effective date of the HAP contract was September 14, 1984. A14.

The HAP contract contains the following provisions, among others, with respect to "assignment, sale, or foreclosure":

> (a) The Owner agrees that is has not made and will not make any sale, assignment, or conveyance or transfer in any fashion, of this Contract . . . or the project or any part of them or any of its interest in them, without the prior written consent of HUD . . . .
>
> (b) The Owner agrees to notify HUD . . . promptly of any proposed action covered by paragraph (a) of this section. The Owner further agrees to request the prior written consent of HUD . . . .

A34.

In June 1998, an entity known as Y/A.W.A.R.E Programs, Inc. ("Y/A.W.A.R.E.") purchased the underlying property from Lakeview Gardens, with HUD's approval, and the HAP

contract was assigned to Y/A.W.A.R.E. On October 18, 1998, the Lakeview Gardens property received a score of 8c* on an inspection conducted by HUD's Real Estate Assessment Center ("REAC"), reflecting both the existence of exigent health and safety conditions and an overall failing grade. A score of 60 is necessary to pass. A8.

On October 23, 1998, Y/A.W.A.R.E. purported to transfer the property to a third party, Diversity Institute ("Diversity"). A8. Shortly thereafter, Y./A.W.A.R.E's mortgagor, Solo Ventures LLC ("Solo Ventures"), filed an action in Ohio state court objecting to the transfer. On August 26, 1999, the Ohio state court issued an order appointing Mark B. Marein and Steven B. Bradley as receivers for the underlying property; granting the receivers "authority to establish and maintain escrow of any and all funds related to Lakeview Gardens from whatever source derived;" and finding against Y/A.W.A.R.E. and in favor of Solo Ventures in the amount of $125,000. A38-39. On September 9, 1999, the Ohio court invalidated the transfer of the Lakeview Gardens property from Y./A.W.A.R.E to Diversity and declared that the $125,000 judgment awarded in favor of Solo Ventures was a lien on the Lakeview Gardens property. A41-42.

On October 25, 1999, HUD entered into a contract with the receivers of the Lakeview Gardens property extending the HAP contract by 120 days, until January 13, 2000. A3-4.

On December 21, 1999, Y/A.W.A.R.E. executed a real estate conveyance agreement conveying the underlying property to Solo Ventures in exchange for Solo Ventures' agreement to forebear from collecting upon the outstanding judgment it had obtained in Ohio state court. A45. The agreement contains the following provision:

> Grantee acknowledges that Grantor is a party to a Housing Assistance Program ("HAP") Agreement with HUD, contract

> number OH 12-E000-003 which has expired as of September 13, 1999 and is not subject to renewal with Grantor. Per HUD requirement, Grantor and Grantee agree to execute an Assignment of said contract for immediate submission to HUD along with a fully executed copy of this Agreement for HUD's review and approval, Grantee agrees to comply with all requirements for the transfer if the HAP Agreement from Grantor to Grantee at Grantee's expense.

A47.

On the same day, Y./A.W.A.R.E. executed an assignment assigning its rights under the HAP contract to Solo Ventures. A53. The assignment stated that it was "subject to the written consent required by the United States Department of Housing and Urban Development and shall not be effective until such consent is given." Id.

By letter dated January 14, 2000, HUD offered the appointed receivers an additional 120-day renewal term (beyond the initial 120 days that had expired the day before) and instructed that the receivers execute and return a renewal contract to be provided under separate cover. HUD also stated that it would be "requiring," among other things, a favorable score on the upcoming REAC inspection, the taxpayer identification number for the receiver, the results of unit inspections performed by ownership, and a plan of action detailing how and when repairs would be completed and funded. A6-7. HUD has no record of a renewal contract being returned by the receiver. A9.

On January 29, 2000, Solo Ventures conveyed its interest in the Lakeview Gardens property to plaintiff, Forest Glen, for fourteen dollars. A56.

By letter dated February 11, 2000, an attorney representing Forest Glen sent to HUD copies of (1) the December 21, 1999 real estate conveyance agreement conveying the Lakeview Gardens property from Y./A.W.A.R.E. to Solo Ventures; (2) the December 21, 1999 assignment

of Y./A.W.A.R.E.'s interest in the HAP contract to Solo Ventures (which Forest Glen's attorney indicated was accompanied by an "open consent document pending HUD approval"); (3) documentation reflecting the subsequent transfer of the property to Forest Glen; and (4) a signed receipt of an upcoming HUD inspection. A60-61.

HUD did not consent to the assignment provided by Forest Glen's attorney, or to any assignment of an interest in the HAP contract. A9. Instead, on February 15, 2000, HUD conducted a second REAC inspection. The Lakeview Gardens property received a score of 26c*, and inspectors noted the existence of 25 exigent health and safety conditions. Id. By letter dated March 23, 2000, HUD notified Y./A.W.A.R.E., Forest Glen, Solo Ventures, and the receiver that the HAP contract would not be renewed and that Section 8 Vouchers would be provided to the residents of Lakeview Gardens. A62-63. By letter dated May 10, 2000, HUD reiterated this conclusion to the attorney representing Forest Glen and further stated that, in light of the substandard condition of the Lakeview Gardens property, it would not approve the transfer of the HAP contract. A64-65.

Forest Glen filed a complaint in this Court on September 16, 2005. A1. In its complaint, it seeks (1) recovery of housing assistance payments under the renewal contract between HUD and the receiver for the period between September 14, 1999 and January 13, 2000 (Count I); recovery of housing assistance payments under the proposed contract sent to the receiver for the period between January 14, 2000 and April 14, 2000 (Count II); and (3) recovery under an unjust enrichment theory for housing services provided to Section 8 residents from April 15, 2000 through June 30, 2000 (Count III).

## ARGUMENT

### I. Legal Standard For Dismissal Pursuant to RCFC12(b)(1)

This Court may grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) when, in view of the record presented, "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.'" McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Although the factual allegations, as pled, must be presumed true and viewed in the light most favorable to the plaintiff, the burden of establishing the Court's jurisdiction falls squarely upon the plaintiff. McCauley, 38 Fed. Cl. at 262-63; Rice v. United States, 31 Fed. Cl. 156, 161 (1994), aff'd, 48 F.3d 1236 (Fed. Cir. 1995) (table).

This Court is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428 (1984). Its jurisdiction to entertain claims and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). The waiver of sovereign immunity, and hence the consent to be sued, must be expressed unequivocally and cannot be implied. Id. Jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980). As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983).

## II. The Court Lacks Jurisdiction To Entertain Any Of The Claims In The Complaint Because Forest Glen Neither Entered Into A Contract With The United States Nor Was Assigned The Rights Of A Party In Contractual Privity With The United States

### A. Forest Glen Cannot Maintain A Claim For Breach Of Contract

In Counts I and II of the Complaint, Forest Glen seeks recovery of HAP assistance payments claimed to be due under the initial renewal contract (for the time period between September 14, 1999 and January 13, 2000) and under the proposed renewal covering the 120 days thereafter.[1] These claims fail for several reasons.

First, Forest Glen is not a party to any contractual relationship created by these documents. Indeed, the parties to initial renewal contract, executed on October 25, 1999, were HUD and "Steven L. Bradley or Mark Marein," the Court appointed receivers for the Lakeview Gardens property. A3. Similarly, the proposed renewal was offered to Mr. Bradley, one the receivers, on January 14, 2000. A6. To the extent these documents, which predate the transfer of the property to Forest Glen, are the source of contractual obligations, these obligations would be between HUD and the receivers, and not between HUD and Forest Glen. Because Forest Glen was not in contractual privity with the United States, it cannot state a claim for breach of contract against the Government. See, e.g., Martinez v, United States, 48 Fed. Cl. 851, 860 (2001) ("The requirement of privity here simply mean[s] that the alleged contract must actually be between the plaintiff and the government, and if such is not found, this court simply lacks jurisdiction to entertain [plaintiff's] claims." (citing Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998), cert denied, 528 U.S. 820 (1999)).

---

[1] In its complaint, Forest Glen assumes that this 120-day period would expire on April 14, 2000. In fact, 120 days from January 14, 2000 is May 13, 2000.

Second, notwithstanding plaintiff's characterization of itself in its complaint as an assignee, Forest Glen was not assigned any contract that may have existed between the Government and the receivers for the Lakeview Gardens property. As noted above, the HAP contract that was the subject of the initial renewal contract specifically conditioned the transfer of rights arising under the HAP contract upon the prior written consent of HUD. A34. Tellingly, the parties to the December 21, 1999 transfer of the Lakeview Gardens property to Forest Glen's direct assignor**,** Solo Ventures, was accompanied by an assignment that stated that it was "subject to the written consent required by the United States Department of Housing and Urban Development and shall not be effective until such consent is given." A53. Because of the substandard condition of the Lakeview Gardens property, HUD never consented to the transfer of the rights in the contract to Solo Ventures, and a fortiori, never consented to the Solo Ventures' transfer of its rights to yet another assignee, Forest Glen. A9, 64-65.

Finally, there is no evidence suggesting that any party, let alone a party in contractual privity with the United States, actually accepted HUD's offer to extend the HAP renewal contract by an additional 120 days after January 13, 2000. HUD has no record that the receiver accepted the offer in the manner in which acceptance was invited – i.e., by returning an executed copy of a renewal contract. A9. Moreover, HUD's offer to extend the agreement stated that it was "requiring," among other things, a "favorable improvement in the score on the upcoming . . . REAC physical inspection." A6. The result of the inspection, upon which Lakeview Gardens received less than half of the score necessary even to provide decent, safe, and sanitary, belies the existence of the improvement upon which the proposal to extend the contract was conditioned. A8-9.

### B. This Court Lacks Jurisdiction To Entertain A Claim For Unjust Enrichment

Count III of Forest Glen's complaint seeks recovery under an unjust enrichment theory. However, this Court lacks jurisdiction over implied-in-law contracts. See, e.g., Mann v. United States, 68 Fed. Cl. 666, 671 (2005) (citing Hercules, Inc. v. United States, 516 U.S. 417, 423, (1996)). Forest Glen has neither alleged nor can demonstrate the existence of an actual contract between itself and the United States, whether express or implied-in-fact, covering either the period mentioned in Count III of the Complaint (April 15, 2000 through June 30, 2000), or for any other period of time. Accordingly, dismissal of Count III of the Complaint is warranted.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant defendant's motion to dismiss for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

OF COUNSEL:
STACEY E. SINGLETON
Trial Attorney
Office of Litigation

GREGORY G. GUSTIN
Associate Regional Counsel
for Program Enforcement
Departmental Enforcement Center

Department of Housing and Urban Development

s/Andrew P. Averbach
ANDREW P. AVERBACH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L. Street, N.W.
Attn: Classification Unit , 8th Floor
Washington, D.C. 20530
Telephone: (202) 353-0527
Fax: (202) 305-2118

December 18, 2006

Attorneys for Defendant