**FOREST GLEN PROPERTIES, LLC v. UNITED STATES**
**Fed. Cl. No. 05-1006C**

**Appendix In Support of Defendant's Motion To Dismiss**
**For Lack Of Subject Matter Jurisdiction**

**Table of Contents**

Complaint . . . . . 1

Declaration of John A. Schuster, December 15, 2006 . . . . . 8

Housing Assistance Payments Contract, May 4, 1984 . . . . . 10

Order, Solo Ventures LLC v. Y/A.W.A.R.E Programs, Inc., August 26, 1999 . . . . . 39

Entry of Partial Default Judgment,
Solo Ventures LLC v. Y/A.W.A.R.E Programs, Inc., September 9, 1999 . . . . . 40

Real Estate Conveyance Agreement, December 21, 1999 . . . . . 45

Assignment, December 21, 1999 . . . . . 53

Warranty Deed, January 31, 2000 . . . . . 56

Letter from Stacey E. Polk, Esq. to Dennis G. Morton, February 11, 2000 . . . . . 60

Letter from Walter Modzierz & Dennis G. Morton to Betty Butler, March 23, 2000 . . . . . 62

Letter from Margarita Maisonet & Dennis G. Morton to Stacey E. Polk, Esq. . . . . . 64

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

05-1006C

| | | |
|---|---|---|
| FOREST GLEN PROPERTIES, LLC<br>5 Severance Circle, Suite 505<br>Cleveland Heights, OH 44118<br><br>Plaintiff<br><br>vs.<br><br>U.S. DEPT. OF HOUSING & URBAN DEVELOPMENT<br>[1350 Euclid Ave., Suite 500<br>Cleveland, OH 44115-1815]<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. __________<br><br><br><br>**COMPLAINT** |

### ***Parties***

At all times relevant, Plaintiff was and remains Assignee under a certain Housing Assistance Payments Contract between its Assignor, Receivers for Lakeview Gardens, Ltd., et al., and the Defendant.

A copy of that contract is not hereto attached as Defendant is in receipt of same.

### ***First Claim***
***(Breach of Contract - First Renewal)***

1. On or about 10/25/99, Plaintiff's Assignor and the Defendant entered into the attached "Renewal Contract" for the term, 9/14/99 through 1/13/00.

2. Plaintiff's Assignor performed its obligations under that Renewal Contract.

3. Defendant breached the Renewal Contract by failing and/or refusing to pay its circa $70,000.00 contract price.

### ***Second Claim***
***(Breach of Contract - Second Renewal)***

1. On or about 1/14/00 and per the attached correspondence, the Defendant offered Plaintiff's Assignor an identical Renewal Contract for the term, 1/14/00 through 4/14/00.

GUARNIERI AND SECREST, P.L.L.
ATTORNEYS AT LAW
151 E. MARKET STREET
P.O. BOX 4270
WARREN, OHIO 44482



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

2. Plaintiff's Assignor accepted that offer and Plaintiff similarly performed for and during that 1/14/00 - 4/14/00 term.

3. Defendant breached such Renewal Contract by failing and/or refusing to pay its circa $70,000.00 contract price.

***Third Claim***
***(Breach of Quasi Contract - Unjust Enrichment)***

1. For and during the period, 4/15/00 through 6/30/00, and with Defendant's knowledge, acquiescence and consent, Plaintiff continued to perform the same housing services for Defendant's so-called "Section 8 Residents," for which the Defendant enjoyed a benefit having a value of $58,333.33.

2. For those services, Plaintiff suffered a concomitant detriment of like value.

3. In equity and good conscience, and under the facts and circumstances presented, the Defendant ought not be permitted to retain that benefit to Plaintiff's stated detriment.

WHEREFORE, Plaintiff demands judgment against the Defendant in the sum of $198,333.33, together with interest as provided by law and the costs of this action.

GUARNIERI & SECREST, P.L.L.

MICHAEL D. ROSSI (#0005591)
151 East Market Street
P.O. Box 4270
Warren, Ohio 44482
(330) 393-1584
(330) 395-3831- Fax
ATTORNEY FOR PLAINTIFF

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
Office of Housing, Federal Housing Commissioner

HOUSING ASSISTANCE PAYMENTS
RENEWAL CONTRACT

HUD as Contract Administrator

SECTION 8 PROJECT NUMBER: OH12-E000-003.

SECTION 8 PROJECT NUMBER OF EXPIRING CONTRACT
(if different): N/A.

FHA PROJECT NUMBER: (if applicable) NA.

This HOUSING ASSISTANCE PAYMENTS CONTRACT ("Contract") is entered into between the U.S. Department of Housing and Urban Development ("HUD") and STEVEN L. BRADLEY, the court appointed Receiver: Per Case #372525 (dated August 26, 1999) (copy attached), pursuant to the United States Housing Act of 1937, 42 U.S.C. 1437 et seq. The purpose of this Contract is to provide housing assistance payments on behalf of Eligible Families ("Families") leasing decent, safe and sanitary units from the Owner.

OR MARK MAREN
RTC
10-20

Previously, HUD and the Owner entered into a Housing Assistance Payments Contract ("Expiring Contract") to provide section 8 assistance to the Owner for eligible families living in LAKEVIEW GARDENS ("Project").

This Expiring Contract expires on SEPTEMBER 13, 1999 (STAGE 2)

HUD and the Owner desire to renew for the term specified below the Expiring Contract **EXCEPT for the Contract Rent and Rent Adjustment Provisions.**

THEREFORE, HUD and the Owner hereby agree as follows:

1. This Contract provides Housing Assistance Payments to the Owner for the term specified (see #4 & #5 below) at the contract rent levels listed in Exhibit A.

2. All terms of the Expiring Contract are renewed except for those provisions relating to contract rents and rent adjustments.

3. There will be no rent adjustments during the term of this Contract.

4. The effective date of this Contract is SEPTEMBER 14, 1999**
**COMBINES STAGE 1 & 2

5. This Contract expires on JANUARY 13, 2000.

6. The maximum amount of the commitment for housing assistance payments under this Contract is $70,000**. **120-DAY TERM OF CONTRACT

7. The Owner warrants that it has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

8. The Owner warrants that the rental units to be leased under the terms of this Contract are in decent, safe and sanitary conditions, as defined by HUD.

9. Notwithstanding any provision to the contrary, HUD, by executing this contract, does not make any warranty and/or representation as to the condition of the rental units. Execution of this Contract by HUD is not an endorsement by HUD that the rental units are in decent, safe and sanitary condition, as defined by HUD.

10. It is a crime to knowingly make false statements to HUD on this form or any other similar form. Penalties upon conviction can include a fine and imprisonment. 18 U.S.C. 1001, 1010.

This Contract is hereby executed with respect to the contract units described in Exhibit A.

United States of America
Secretary of Housing and
Urban Development

(Signature)
By: Preston A. Pake, Jr., Director
Ohio Multifamily HUB

Date: ____

Owner: LAKEVIEW GARDENS, LTD.

(Signature)
By: ____

Date: 10-25-99

EXHIBIT A

IDENTIFICATION OF UNITS ("CONTRACT UNITS")
BY SIZE AND APPLICABLE CONTRACT RENTS

PROJECT #: N/A CONTRACT #: OH12-E000-003

| NUMBER OF UNITS | NUMBER OF BEDROOMS | CONTRACT RENTS | UTILITY ALLOWANCE | GROSS RENT |
|---|---|---|---|---|
| ONE BEDROOM | 8 | $454 | $29 | $483 |
| ONE BEDROOM | 9 | $456 | $26 | $482 |
| TWO BEDROOM | 11 | $489 | $34 | $523 |
| TWO BEDROOM | 6 | $514 | $35 | $549 |
| THREE BEDROOM | 6 | $550 | $42 | $592 |

CONTRACT RENTS EFFECTIVE: 11/97

U.S. DEPARTMENT OF HOUSING AND URBAN DEVEL[O]PMENT

CLEVELAND AREA OFFICE
THE RENAISSANCE ON PLAYHOUSE SQUARE
1350 EUCLID AVENUE, SUITE 500
CLEVELAND, OHIO 44115-1815

STEVEN L. BRADLEY
SYNEBERT & MAREIN
ATTORNEYS AT LAW
222 LEADER BUILDING
526 SUPERIOR AVENUE
CLEVELAND, OHIO 44114-1210

JAN 14 2000

Dear Mr. Bradley:

SUBJECT: Receivership/Contract Renewal
Project No. Non-Insured/Section 8# OH12-E000-003
Lakeview Gardens
Cleveland, Ohio

As the Receiver for Lakeview Gardens, you are being offered a 120 day renewal for the Housing Assistance Payments (HAP) Contract for that property. Four (4) copies of that subsidy contract are being sent separately. They should be signed and returned to the Cleveland HUD Office following your receipt. This 120 day renewal has an effective date of January 14, 2000.

During this 120 day renewal period, the Cleveland Multifamily Program Center (Cleveland HUD Office) hopes to approve the new owner and management agent when we receive proper information which permits us to identify those entities. All required documents will have to be submitted.

Additionally, in order to evaluate ownership and management's capacity to provide decent, safe, and sanitary, long-term housing at Lakeview Gardens, we are requiring the following:

1. a date when Lakeview Gardens becomes TRACS compliant.

2. a favorable improvement in the score on the upcoming (February 2, 2000) REAC Physical Inspection.

3. the Taxpayer Identification Number (TIN) be provided for the Direct-Deposit form in our possession for the receiver.

4. the results of the unit inspections performed by ownership and/or management.

5. your Plan of Action which details when and how repairs will be completed and their source of funding.

In addition, Mr. Eric Moore from the Chicago HUD Enforcement Center plans to visit Lakeview Gardens between February 2 - 4, 2000. During Mr. Moore's visit in Cleveland, we would like both Stacey Polk and Steven Bradley to meet here at the Cleveland HUD Office to discuss with Eric Moore and the Cleveland staff where we are going with Lakeview Gardens.

The reason for evaluating is to help us determine whether we will need to issue vouchers and to give residents enough time to relocate.

Finally, please provide this Office with a copy of legal documents generated by the court order which created the receivership. Please provide us with documents which describe the responsibilities the receiver has towards the property known as Lakeview Gardens. Your assistance in this matter is greatly appreciate. Should you have questions, please contact Mr. Rick Boley of this Office at (216) 522-4058, Ext. 7171.

Sincerely,

Dennis G. Morton
Director
Cleveland Multifamily Program Center

cc: Stacey Polk

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| FOREST GLEN PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-1006C |
| v. | ) | |
| | ) | (Judge Wolski) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JOHN A. SCHUSTER**

1. I am employed by the Department of Housing and Urban Development ("HUD") as a Supervisory Project Manager (Production) in the Cleveland Multifamily Program Center.

2. As an employee of HUD, I have had personal involvement in the inspection of the Lakeview Gardens property in 2000 and HUD's decision not to renew its housing assistance payments ("HAP") contract with the owner of the Lakeview Gardens property. I have also had an opportunity to review the files maintained by HUD relating to this project.

3. My review of HUD's files relating to Lakeview Gardens indicates that in June 1998, an entity known as Y./A.W.A.R.E Programs, Inc. ("Y./A.W.A.R.E.") purchased the Lakeview Gardens property with HUD's approval, and that the HAP contract was assigned to Y/A.W.A.R.E. On October 18, 1998, the Lakeview Gardens property received a score of 8c* on an inspection conducted by HUD's Real Estate Assessment Center ("REAC"), reflecting both the existence of exigent health and safety conditions and an overall failing grade. A score of 60 is necessary to pass. My review further indicates that on October 23, 1998, Y/A.W.A.R.E. purported to transfer the property to a third party, Diversity Institute, prompting a dispute in Ohio state court as to what entity owned the underlying property.

4. On October 25, 1999, HUD entered into a contract with "Steven L. Bradley or Mark Marein," who had been appointed receivers of the Lakeview Gardens property, extending the original HAP contract by 120 days, until January 13, 2000.

5. By letter dated January 14, 2000, HUD offered the receiver an additional 120-day renewal term (beyond the initial 120 days that had expired the day before) and instructed that the receiver execute and return a renewal contract to be provided under separate cover. HUD also stated that it would be "requiring," among other things, a date when Lakeview Gardens would be compliant on the TRACS electronic information system, a favorable score on the upcoming REAC inspection, the taxpayer identification number for the receiver, the results of unit inspections performed by ownership, and a plan of action detailing how and when repairs would be completed and funded. Based upon my review of the Lakeview Gardens file, no renewal contract covering the 120-day period beginning January 14, 2000 was received from the receiver.

6. On February 15, 2000, HUD conducted a second REAC inspection. The Lakeview Gardens property received a score of 26c*, and inspectors noted the existence of 25 exigent health and safety conditions. HUD subsequently notified the owners of the Lakeview Gardens property that, because of the substandard condition of the property, the HAP contract would not be renewed and HUD would not approve the request to assign rights in the HAP contract.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 15, 2006.

John A. Schuster

JOHN A. SCHUSTER

Rec'D 12-13-84

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM
DISPOSITION OF PREVIOUSLY HUD-OWNED PROJECTS

PART I OF THE

HOUSING ASSISTANCE PAYMENTS CONTRACT

Type of Project: Private-Owner X or PHA-Owner ____
Partly Assisted Project ____ or Totally Assisted Project ____
Substantial Rehabilitation ____ or Moderate Rehabilitation X or Neither ____

Type of Financing: NONE

[For example: HUD-insured; GNMA tandem; purchase money mortgage; not HUD-insured.]

INITIAL HERE

ACC/HAP CONTRACT LIST NUMBER AND DATE: C-84-317, dated May 4, 1984

SECTION 8 PROJECT NUMBER: OH12-E000-003

FHA PROJECT NUMBER (if applicable): NONE

This Housing Assistance Payments Contract (Contract) is entered into between the United States of America acting through the Department of Housing and Urban Development (HUD) and LAKEVIEW GARDENS, LTD. (Owner) pursuant to the U.S. Housing Act of 1937 (Act), 42 U.S.C. 1437, et seq., and the Department of Housing and Urban Development Act, 42 U.S.C. 3531, et seq. The purpose of this Contract is to provide housing assistance payments on behalf of Eligible Families leasing decent, safe and sanitary units from the Owner.

1.1 SIGNIFICANT DATES AND OTHER ITEMS; CONTENTS AND SCOPE OF CONTRACT.

(a) Effective Date of Contract: SEE EXECUTION OF CONTRACT IN STAGES, 19____.

(b) Fiscal Year. The ending date of each Fiscal Year shall be December 31. [Insert March 31, June 30, September 30, or December 31, as approved by HUD.] The Fiscal Year for the project shall be the 12-month period ending on this date. However, the first Fiscal Year for the project is the period beginning with the effective date of the Contract and ending on the last day of the Fiscal Year which is not less than 12 months after the effective date. If the first Fiscal Year exceeds 12 months, the maximum total annual housing assistance payment in section 1.1(c) will be adjusted by the addition of the pro rata amount applicable to the period of operation in excess of 12 months.

(c) Maximum Annual Contract Commitment. The maximum annual amount of the commitment for housing assistance payments under this Contract (see section 2.3) is the amount of contract authority identified in Exhibit 3.

(d) Project Description.

SEE ATTACHED ( Maintenance Service and Utilities to be Provided by Lakeview Gardens, Ltd.

HUD-52522C (8-80) *

(e) Statement of Services, Maintenance and Utilities Provided by the Owner.

(1) Services and Maintenance:

SEE ATTACHED (Maintenance Service and Utilities to Be Provided by Lakeview Gardens, Ltd.)

(2) Equipment:

SEE ATTACHED (Maintenance Service and Utilities)

(3) Utilities:

SEE ATTACHED (Maintenance Service and Utilities)

(4) Other:

SEE ATTACHED (Maintenance Service and Utilities)

(f) Contents of Contract. This Contract consists of Part I, Part II (except as indicated in section 1.4), and the following exhibits:

Exhibit 1: The schedule showing the number of units by size (Contract Units) and their applicable rents (Contract Rents). (SEE ATTACHED)

Exhibit 2: Daily Debt Service (for substantial rehabilitation projects only). (If the project is not permanently financed when the Contract is executed, this exhibit should be added when the necessary information becomes available.)

Exhibit 3: The schedule showing contract and budget authority. (SEE ATTACHED)

Exhibit 4: The Affirmative Fair Housing Marketing Plan, if applicable. (SEE ATTACHED)

Exhibit 5: The approved Purchase and Use Plan including a project description and the tenant selection factors. Exhibit 5 may incorporate these items by reference, specify the location of the items, and list them, including any amendments. (SEE ATTACHED)

Exhibit 6: HUD standards for decent, safe and sanitary housing. (SEE ATTACHED)

Additional exhibits: [Specify additional exhibits, if any, such as Special Conditions for Acceptance. If none, insert "None."]

(g) Scope of Contract. This Contract, including the exhibits, whether attached or incorporated by reference, comprises the entire agreement between the Owner and HUD with respect to the matters contained in it. Neither party is bound by any representations or agreements of any kind except as contained in this Contract, any applicable regulations, and agreements entered into in writing by the parties which are not inconsistent with this Contract.

1.2 TERM OF CONTRACT; OBLIGATION TO OPERATE PROJECT FOR FULL TERM.

(a) Term of Contract. The term of this Contract for any unit shall be -15- years, beginning with the effective date of this Contract for such unit. [Insert number approved by HUD in accordance with the HUD regulations.] If the project is completed in stages, the term shall be separately related to the units in each stage. However, the

HUD 52522C (8-80)

total Contract term for all the stages, beginning with the effective date of the Contract for the first stage, shall not exceed the Contract term for any unit, plus two years.

(b) Obligation to Operate Project for Full Term. The Owner agrees to continue operation of the project in accordance with this Contract for the full term specified in paragraph (a).

1.3 HUD ASSURANCE.

The execution of this Contract by HUD is an assurance by HUD to the Owner that:

(a) The faith of the United States is solemnly pledged to the payment of housing assistance payments pursuant to this Contract, and

(b) HUD has obligated funds for these payments.

1.4 APPLICABILITY OF CERTAIN PROVISIONS OF THIS CONTRACT.

| Provision | Applic. | Not Applic. |
| --- | --- | --- |
| (a) 2.4(i). Payments to Trustee by FHA as Lender. Applicability: Not applicable. | | X |
| (b) (1) 2.7(f). Adjustment of Contract Rents Based on Cost Certification. Applicability: Applicable. If the Contract Rents are adjusted under section 2.4 of the Agreement, section 2.7(f) should be changed to "not applicable" when the Contract is executed. | X | |
| (2) 2.7(g). Adjustment of Contract Rents to Reflect Actual Cost of Tax Exempt Financing Not Subject to Part 811 or Paragraph (f). Applicability: Not applicable. | | X |
| (3) 2.7(h). Adjustment of Contract Rents: Part 811. Applicability: Not applicable. | | X |
| (c) 2.13. Training, Employment and Contracting Opportunities. Applicability: All projects for which the total initial Contract Rents over the term of the Contract exceed $500,000. | | X |
| (d) 2.14. Flood Insurance. Applicability: All projects in special flood hazard areas. | | |
| (e) 2.15. Clean Air and Federal Water Pollution Control Acts. Applicability: All projects for which the total initial Contract Rents over the term of the Contract exceed $100,000. | X | |

1.5 OWNER'S FAILURE TO COMPLY WITH CONTRACT.

In addition to other remedies available to HUD under this Contract, the Agreement to Enter into Housing Assistance Payments Contract, or the Regulatory Agreement for a default by the Owner, the Owner and HUD agree that if the Owner fails to comply with the requirements of this Contract, HUD may rescind the sale of the project or take other appropriate action in accordance with section 2.21.

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

SEE EXECUTION OF CONTRACT IN STAGES

OWNER ~~CHELSEA SQUARE, LTD.~~ LAKEVIEW GARDENS, LTD.

By [signature]

General Partner
(Official Title)

Date Nov 27, 1984

United States of America
Secretary of Housing and
Urban Development

By____________________
* MICHAEL T. SCANLON, MANAGER
(Official Title)

Date________________, 19____

* Type name of signatory under signature line.

[If the project is to be completed and accepted in stages, execution of the Contract with respect to the several stages appears on the following pages of this Contract.]



HUD-52522C (8-80)

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 1

This Contract is hereby executed with respect to the units described in Exhibit 1a,

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1a is July 23, 1984.

United States of America
Secretary of Housing and
Urban Development

By [signature]

Michael T. Scanlon, Manager
(Official Title)

Date November 28, 1984

OWNER LAKEVIEW GARDENS, LTD.

By [signature]

General Partner
(Official Title)

Date Nov 27, 1984

This Phase will include 20 units:

1 Bedroom - 9 units
2 Bedroom - 5 units
3 Bedroom - 6 units
20 units

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 2

This Contract is hereby executed with respect to the units described in Exhibit 1b.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1b is September 14, 1984.

United States of America
Secretary of Housing and
Urban Development

By [signature]

Michael T. Scanlon, Manager
(Official Title)

Date ________, 19____

OWNER LAKEVIEW GARDENS, LTD.

By [signature]

General Partner
(Official Title)

Date Feb 4, 1985

This Phase will include 20 units:

| | |
|---|---|
| 1 Bedroom | 8 units |
| 2 Bedroom | 6 units |
| 2 Bedroom w/Den | 6 units |
| | 20 units |

EXECUTION OF CONTRACT WITH RESPECT TO
CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

Stage 3

This Contract is hereby executed with respect to the units described in Exhibit 1c.

EFFECTIVE DATE: The effective date of this Contract with respect to the units described in Exhibit 1c is ______________________________, 19_____.

United States of America
Secretary of Housing and
Urban Development

By______________________________

______________________________
(Official Title)

Date____________________, 19______

OWNER______________________________

By______________________________

______________________________
(Official Title)

Date____________________, 19______

EXHIBIT 1

SCHEDULE OF CONTRACT UNITS AND CONTRACT RENTS 1

| Number of Bedrooms | Number of Units 2 | Household Type (elderly, non-elderly family, large nonelderly family) | GROSS RENT |
|---|---|---|---|
| 1 | 17 | Family | $353.00 |
| 2 | 11 | Family | $390.00 |
| 2 w/den | 6 | Family | $408.00 |
| 3 | 6 | Family | $454.00 |

INITIAL HERE

1/ This Exhibit must be completed and attached to the Contract at the time the Agreement is executed. It may, however, be amended in accordance with program rules before the Contract is executed. When Contract Rents are amended (e.g. at the time of an annual adjustment) this format should be used.

2/ If less than 100 percent of the units in the project are covered by this Contract, identify specific units to be leased at initial rent-up to eligible families. See section 2.8(c)(6).

EXHIBIT 2

DAILY DEBT SERVICE

| Number of Bedrooms | Number of Units | Daily Debt Service |
|---|---|---|
| 0 | ________ | $________ |
| 1 | ________ | $________ |
| 2 | ________ | $________ |
| 3 | ________ | $________ |
| 4 | ________ | $________ |
| 5 | ________ | $________ |

This information is used for computing assistance payments for vacant units under section 2.4(e).

Exhibit 3

This Exhibit shows the initial and subsequent amounts of contract and budget authority obligated for project number: OH12-E000-003. (The Housing Division shall furnish the Legal Division with the information necessary to complete this Exhibit, with appropriate supporting documentation including an ACC/HAP Contract List.)

| | Contract Authority | Budget Authority |
|---|---|---|
| As of the Effective Date of Agreement | $185,592 | $2,783,880 |
| Effective Date of Agreement Amendment: ________ | | |
| Show Increase or Decrease | ________ | ________ |
| Revised Total | ________ | ________ |
| Effective Date of Agreement Amendment: ________ | | |
| Show Increase or Decrease | ________ | ________ |
| Revised Total | ________ | ________ |

| | Contract Authority | Budget Authority |
|---|---|---|
| As of the Effective Date of Contract | | |
| Effective Date of Contract Amendment: ________ | | |
| Show Increase or Decrease | ________ | ________ |
| Revised Total | ________ | ________ |
| Effective Date of Contract Amendment: ________ | | |
| Show Increase or Decrease | ________ | ________ |
| Revised Total | ________ | ________ |

SECTION 8 HOUSING ...
PART II OF THE

HOUSING ASSISTANCE PAYMENTS CONTRACT

By and between U.S. Department of HUD (CA) and
Lakeview Gardens, Ltd. (Owner).

Check Type of Project: Private-Owner/HUD X or PHA-Owner/HUD ____
(HUD is the Contract Administrator or "CA.")

or Private-Owner/PHA ____
(The PHA is the CA)

| | | | | |
|---|---|---|---|---|
| NEW CONSTRUCTION<br>Part 880 ____<br>Part 885 ____ | or | SUBSTANTIAL REHABILITATION<br>Part 881 ____<br>Part 885 ____ | or | PREVIOUSLY HUD-OWNED<br>Part 886, Subpart C X |

SECTION 8 PROJECT NUMBER: OH12-E000-003

FHA PROJECT NUMBER (if applicable): None

2.1 OWNER'S WARRANTIES; AMENDMENTS.

(a) Legal Capacity. The Owner warrants that it has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

(b) Completion of Work. The Owner warrants that the project as described in section 1.1 is in good and tenantable condition and that the project has been completed in accordance with the terms and conditions of the Agreement to Enter into Housing Assistance Payments Contract (Agreement) or will be completed in accordance with the Special Conditions for Acceptance (see attached exhibit, where applicable). The Owner further warrants that it will remedy any defects or omissions covered by this warranty if called to its attention within 12 months of the effective date of this Contract. The Owner and the CA agree that the continuation of this Contract shall be subject to the Owner meeting any Special Conditions for Acceptance.

2.2 FAMILIES TO BE HOUSED; CONTRACT ADMINISTRATOR (CA) ASSISTANCE.

(a) Families To Be Housed. The Contract Units are to be leased by the Owner to eligible Lower-Income Families (Families) for occupancy by such Families solely as private dwellings and as their principal place of residence. (See also section 2.10.)

(b) CA Assistance.

(1) The CA hereby agrees to make housing assistance payments on behalf of Families for the Contract Units, to enable the Families to lease Decent, Safe, and Sanitary housing pursuant to section 8 of the Act.

(2) If there is a Utility Allowance and if the Allowance exceeds the total Family contribution, the Owner shall pay the Family the amount of the excess. The CA will pay funds to the Owner in trust solely for the purpose of making this payment. Any pledge by the Owner of payments properly payable under this Contract shall not be construed to include payments covered by this paragraph (b)(2). (See 24 CFR section 880.501(e), 881.501(e), or 886.309(a).)

2.3 MAXIMUM HOUSING ASSISTANCE COMMITMENT; PROJECT ACCOUNT.

(a) Maximum Annual Contract Commitment. Notwithstanding any other provisions of this Contract (other than paragraph (b)(2) of this section) or any provisions of any other contract between the CA and the Owner, the CA shall not be obligated to make and shall not make any housing

Replaces HUD-52582B (11-75), HUD-52585B (11-75), 52622B (11-75), & 52625B (11-75), which are obsolete.

HUD-52522D (8-80) *

assistance [illegible] authorizing terminations in the [illegible] for this purpose [illegible] previously HUD-owned [illegible]jects) under this Contract [illegible] amount identified in section 1.1(c). However, this [illegible]unt may be reduced commensurately with any reduction in the number of Contract Units or in the Contract Rents or pursuant to any other provisions of this Contract.

(b) Project Account.

(1) A project account will be established and maintained by HUD, consistent with its responsibilities under section 8(c)(6) of the Act, as a specifically identified and segregated account for the project. The account will be established and maintained, in an amount determined by HUD, out of the amounts by which the Maximum Annual Contract Commitment under section 1.1(c) (for Private-Owner/HUD or FHA-Owner/HUD Projects) or Maximum ACC Commitment (for Private-Owner/PHA Projects) exceeds the amount actually paid out under the Contract or ACC each fiscal year. Payments will be made from the account for housing assistance payments (and fees for PHA administration) when needed to cover increases in Contract Rents or decreases in tenant rents and for other costs specifically approved by the Secretary.

(2) If funds are available in the project account, the maximum annual contribution payable for any fiscal year will be increased by the amount, if any, as may be required for housing assistance payments (and fees where the CA is a PHA) to cover increases in Contract Rents or decreases in rents payable by Families and other costs approved by HUD.

(3) Whenever a HUD-approved estimate of the required annual contribution for a fiscal year exceeds the maximum annual commitment and would cause the amount in the project account to be less than 40 percent of the maximum annual commitment, HUD will, within a reasonable period of time, take such additional steps authorized by section 8(c)(6) of the U.S. Housing Act of 1937 as may be necessary to assure that payments under the Contract and ACC (if applicable) will be adequate to cover increases in Contract Rents and decreases in rents payable by Families, including (as provided in that section of the Act) "the reservation of annual contributions authority for the purpose of amending housing assistance contracts, or the allocation of a portion of new authorizations for the purpose of amending housing assistance contracts."

(4) Any amount remaining in the account after payment of the last annual contribution with respect to the project shall be applied by HUD in accordance with law.

2.4 HOUSING ASSISTANCE PAYMENTS TO OWNERS.

(a) Housing Assistance Payments on Behalf of Families.

(1) Housing assistance payments shall be paid to the Owner for units under lease for occupancy by Families in accordance with the Contract. The housing assistance payment will cover the difference between the Contract Rent and that portion of the rent payable by the Family as determined in accordance with the HUD-established schedules and criteria.

(2) The amount of housing assistance payment payable on behalf of a Family and the amount of rent payable by the Family shall be subject to change by reason of changes in Family Income, Family composition, extent of exceptional medical or other unusual expenses or program rules in accordance with the HUD-established schedules and criteria; or by reason of a change in any applicable Utility Allowance approved or required by the CA. Any such change shall be effective as of the data stated in a notification of the change to the Family, which need not be at the end of the Lease term.

(b) Vacancies During Rent-up. If a Contract Unit is not leased as of the effective date of the Contract (or within 15 days of the effective date of this Contract in the case of previously HUD-owned projects), the Owner is entitled to housing assistance payments in the amount of 80 percent of the Contract Rent for the unit for a vacancy period

not exceeding [illegible] effective [illegible] provided that the Owner (1) commenced marketing and otherwise complied with section 2.2(d) of the Agreement, (2) has taken and continues to take all feasible actions to fill the vacancy, including, but not limited to, contacting applicants on its waiting list, if any, requesting the PHA and other appropriate sources to refer eligible applicants, and advertising the availability of the unit in a manner specifically designed to reach eligible families, and (3) has not rejected any eligible applicant, except for good cause acceptable to the CA.

(c) Vacancies after Rent-Up. If an eligible family vacates a unit, the owner is entitled to housing assistance payments in the amount (except as provided in paragraph (d) of this section) of 80 percent of the Contract Rent for the first 60 days of vacancy if the Owner:

(1) Certifies that it did not cause the vacancy by violating the lease, the Contract or any applicable law or by moving a Family to another unit;

(2) Notified the CA of the vacancy or prospective vacancy and the reasons for it immediately upon learning of the vacancy or prospective vacancy;

(3) Has fulfilled and continues to fulfill the requirements specified in paragraphs (b)(1), (2), and (3) of this section; and

(4) Certifies that any eviction resulting in a vacancy was carried out in compliance with section 2.9.

(d) Payments for Vacancies after Initial Occupancy in Previously HUD-Owned Projects. In the case of previously HUD-owned projects, the Owner may receive housing assistance payments for so much of the month in which the Family vacates the unit as the unit remains vacant. Should the unit remain vacant, the Owner may receive from HUD a housing assistance payment in the amount of 80 percent of the Contract Rent for a vacancy period not exceeding an additional month. However, if the Owner collects any of the Family's share of the rent for this period, the payment for the vacancy period must be reduced to an amount which, when added to the Family's payments, does not exceed 80 percent of the Contract Rent. Any such excess shall be reimbursed by the Owner to HUD or as HUD may direct. Paragraphs (c)(1) through (4) apply.

(e) Vacancies for Longer than 60 Days. Except for previously HUD-owned projects not requiring substantial rehabilitation, if an assisted unit continues to be vacant after the period specified in paragraph (b), (c) or (d) of this section, the Owner may apply to receive additional payments for the vacancy period in an amount equal to the principal and interest payments required to amortize that portion of the debt service attributable to the vacant unit (see Exhibit 2) for up to 12 additional months for the unit if:

(1) The unit was in decent, safe and sanitary condition during the vacancy period for which payments are claimed;

(2) The owner has fulfilled and continues to fulfill the requirements specified in paragraph (b), (c) or (d) of this section, as appropriate; and

(c) The owner has demonstrated to the satisfaction of HUD that:

(i) For the period of vacancy, the project is not providing the owner with revenues at least equal to project expenses (exclusive of depreciation), and the amount of payments requested is not more than the portion of the deficiency attributable to the vacant unit, and

(ii) The project can achieve financial soundness within a reasonable time.

(f) [illegible] of Double Compensation [illegible] Vacant [illegible] it can collect [illegible] entitled to payments [illegible] other sources (such as security deposits, unem- for the vacancy from other sources (such as security deposits, amounts collected from the Family, payments from the CA under section 2.8(b), and governmental payments under other programs). If the Owner collects any of the Family's share of the rent for a vacancy period in an amount which, when added to the vacancy payment, results in more than the Contract Rent, the excess must be reimbursed as HUD directs.

(g) <u>CA Not Obligated for Family Rent</u>. The CA has not assumed any obligation for the amount of rent payable by any Family or the satisfaction of any claim by the Owner against any Family other than in accordance with section 2.8(b) of this Contract.

The financial obligation of the CA is limited to making housing assistance payments on behalf of Families in accordance with this Contract.

(h) <u>Owner's Monthly Requests for Payments</u>.

(1) The Owner shall submit monthly requests to the CA or as directed by the CA for housing assistance payments. Each request shall set forth: (i) the name of each Family and the address and/or number of the unit leased by the Family; (ii) the address and/or the number of each unit, if any, not leased to Families for which the Owner is claiming payments; (iii) the Contract Rent as set forth in Exhibit 1 for each unit for which the Owner is claiming payments; (iv) the amount of rent payable by the Family leasing the unit (or, where applicable, the amount to be paid the Family in accordance with section 2.2(b)(2)); and (v) the total amount of housing assistance payments requested by the Owner.

(2) Each of the Owner's monthly requests shall contain a certification by it that to the best of its knowledge and belief (i) the dwelling units are in Decent, Safe, and Sanitary condition, (ii) all the other facts and data on which the request for funds is based are true and correct, (iii) the amount requested has been calculated in accordance with the provisions of this Contract and is payable under the Contract, (iv) none of the amount claimed has been previously claimed or paid under this Contract, and (v) the Owner has not received and will not receive any payments or other consideration from the Family, the PHA, HUD, or any other public or private source for the unit beyond that authorized in this Contract and the lease.

(3) If the Owner has received an excessive payment, the CA (or HUD where the CA is a PHA), in addition to any other rights to recovery, may deduct the amount from any subsequent payment or payments.

(4) The Owner's monthly requests for housing assistance payments are subject to penalty under 18 U.S.C. 1001, which provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(i) <u>Payments to Trustee by PHA Where It Is the Lender</u>. (See section 1.4 for applicability of this paragraph.) The amount of the housing assistance payment determined in accordance with the provisions of this Contract, up to the amount of the mortgage repayments due the PHA from the Owner pursuant to the mortgage loan made by the PHA for the project, shall be credited to the Owner and transferred monthly by the PHA from the account maintained under the General Depositary Agreement pursuant to the ACC to the trustee under the note or bond resolution of the PHA under which the notes or bonds to provide the mortgage loan were issued. Any amount of the housing assistance payment in excess of such credit shall be paid by the PHA directly to the Owner.

2.5 MAINTENANCE, OPERATION AND INSPECTION.

(a) Maintenance and Operation. The Owner agrees to maintain and operate the Contract Units, unassisted units, if any, and related facilities to provide Decent, Safe, and Sanitary housing including the provision of all the services, maintenance and utilities set forth in section 1.1(e). The Owner also agrees to comply with the lead-based paint regulations at 24 CFR Part 35. If the CA determines that the Owner is not meeting one or more of these obligations, the CA shall have the right to take action under section 2.21(b).

(b) Inspection.

(1) Prior to occupancy of any Contract Unit by a Family, the Owner and the Family shall inspect the unit and both shall certify, on forms prescribed or approved by the CA, that they have inspected the unit and have determined it to be Decent, Safe, and Sanitary in accordance with the criteria provided in the forms. The Owner shall keep copies of these reports on file for at least three years.

(2) The CA shall inspect or cause to be inspected the Contract Units and related facilities at least annually and at such other times (including prior to initial occupancy and rerenting of any unit) as may be necessary to assure that the Owner is meeting its obligation to maintain the units in Decent, Safe, and Sanitary condition including the provision of the agreed-upon utilities and other services. The CA shall take into account complaints by occupants and any other information coming to its attention in scheduling inspections and shall notify the Owner and the Family of its determination.

(c) Units Not Decent, Safe, and Sanitary. If the CA notifies the Owner that it has failed to maintain a dwelling unit in Decent, Safe, and Sanitary condition and the Owner fails to take corrective action within the time prescribed in the notice, the CA may exercise any of its rights or remedies under the Contract, including reduction or suspension of housing assistance payments, even if the Family continues to occupy the unit. If, however, the Family wishes to be rehoused in another dwelling unit with section 8 assistance and the CA does not have other section 8 funds for such purposes, the CA may use the abated housing assistance payments for the purpose of rehousing the Family in another dwelling unit. If the Family continues to occupy the unit, it will do so in accordance with the terms of its lease, including the termination date and amount of rent payable by the Family.

(d) Notification of Abatement. Any reduction or suspension of housing assistance payments shall be effective as provided in written notification to the Owner. The Owner shall promptly notify the Family of any such abatement.

(e) Overcrowded and Underoccupied Units. Where the CA determines a unit is larger or smaller than appropriate for an eligible family, the Owner agrees to correct the situation in accordance with HUD regulations and requirements in effect at the time of the determination.

2.6 FINANCIAL REQUIREMENTS.

(a) Submission of Financial and Operating Statements.

The Owner must submit to the CA:

(1) Within 60 days after the end of each fiscal year of the project, financial statements for the project audited by an Independent Public Accountant in the form required by HUD, and

(2) Other statements as to project operation, financial conditions and occupancy as HUD may require pertinent to administration of the Contract and monitoring of project operations.

(b) Use of Project Funds. (Not applicable to Partially Assisted or Previously HUD-Owned Projects.)

(1) Project funds must be used for the benefit of the project, to make mortgage payments, to pay operating expenses, to make required deposits to the replacement reserve in accordance with paragraph (c) of this section and to provide distributions

to the Owner as [illegible] in [illegible]. To the extent HUD determines that [illegible]oject funds are more than needed for these purposes, the surplus project funds must be dep[illegible]ted with the mortgagee or other HUD-approved depository in an interest-bearing residual receipts account. Withdrawals from this account will be made only with the approval of HUD and for project purposes, including the reduction of housing assistance payments. Upon termination of the Contract, any excess funds must be remitted to HUD.

(2) In the case of HUD-insured projects, the provisions of this paragraph (b) will apply instead of the otherwise applicable mortgage insurance requirements, except in the case of partially assisted or previously HUD-owned, insured projects which are subject to the applicable mortgage insurance requirements.

(c) Replacement Reserve. (Not applicable to Partially Assisted or Previously HUD-Owned Projects.)

(1) The Owner shall establish and maintain a replacement reserve in an interest-bearing account to aid in funding extraordinary maintenance and repair and replacement of capital items in accordance with applicable regulations.

(i) The obligation of the Owner to deposit into the replacement reserve shall commence upon the effective date of the Contract. For staged projects, the obligation shall commence on a pro rata basis for units in each stage on the effective date of the Contract for that stage. The amount of the deposit to the replacement reserve will be adjusted each year by the amount of the automatic annual adjustment factor. See 24 CFR Part 888.

(ii) The reserve must be built up to and maintained at a level determined by HUD to be sufficient to meet projected requirements. Should the reserve achieve that level, the rate of deposit to the reserve may be reduced with the approval of HUD.

(iii) All earnings including interest on the reserve must be added to the reserve.

(iv) Funds will be held by the mortgagee or trustee for the bondholders, and may be drawn from the reserve and used only in accordance with HUD guidelines and with the approval of, or as directed by, HUD.

(2) In the case of HUD-insured projects, the provisions of this paragraph (c) will apply instead of the otherwise applicable mortgage insurance requirements, except in the case of partially assisted or previously HUD-owned, insured projects which are subject to the applicable mortgage insurance requirements.

(d) Limitation on Distributions. (Paragraphs (d)(2)-(4) are not applicable to Small, Partially Assisted or Previously HUD-Owned Projects.)

(1) Nonprofit owners are not entitled to distributions of project funds.

(2) For the life of the Contract, project funds may only be distributed to profit-motivated owners at the end of each fiscal year of project operation following the effective date of the Contract after all project expenses have been paid, or funds have been set aside for payment, and all reserve requirements have been met. The first year's distribution may not be made until cost certification, where applicable, is completed. Distributions may not exceed the following maximum returns:

(i) For projects for elderly families, the first year's distribution will be limited to 6 percent on equity. HUD may provide for increases in subsequent years' distributions in accordance with applicable HUD regulations and requirements.

(ii) For projects for nonelderly families, the first year's distribution will be limited to 10 percent on equity. HUD may provide for increases in subsequent years' distributions in accordance with applicable HUD regulations and requirements.

(3) For the purpose of determining the allowable distribution, an Owner's equity investment shall be computed in accordance with HUD regulations and requirements.

(4) Any short-fall in return may be made up from surplus project funds (see paragraph (b)(1)) in future years.

(5) In the case of HUD-insured projects, the provisions of this section will apply instead of the otherwise applicable mortgage insurance program regulations, except in the case of small, partially assisted or previously HUD-owned, insured projects which are subject to the applicable mortgage insurance regulations.

2.7 RENT ADJUSTMENTS.

(a) Funding of Adjustments. Housing assistance payments will be made in amounts commensurate with Contract Rent adjustments under this section up to the maximum amount authorized under section 2.3(a) of this Contract.

(b) Annual Adjustments.

(1) Upon request from the Owner to the CA, Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR 888 and this Contract. See, however, paragraph (d).

(2) In the case of previously HUD-owned projects, the Contract Rents shall be adjusted in accordance with 24 CFR 886, Subpart C and this Contract.

(3) Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the annual adjustment result in Contract Rents less than the Contract Rents on the effective date of the Contract.

(c) Special Additional Adjustments. Special additional adjustments shall be granted, when approved by HUD, to reflect increases in the actual and necessary expenses of owning and maintaining the Contract Units which have resulted from substantial general increases in real property taxes, utility rates, assessments, and utilities not covered by regulated rates. The Owner must demonstrate that such general increases have caused increases in the Owner's operating costs which are not adequately compensated for by annual adjustments. The Owner shall submit to HUD supporting data, financial statements and certifications which clearly support the increase. See, however, paragraph (d).

(d) Overall Limitation. Notwithstanding any other provision of this Contract, adjustments after Contract execution or cost certification, where applicable, shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by HUD; except to the extent that the differences existed with respect to the Contract Rents set at Contract execution or cost certification, where applicable.

(e) Incorporation of Rent Adjustment. Any adjustment in Contract Rents shall be incorporated into Exhibit 1 by a dated addendum to the exhibit establishing the effective date of the adjustment.

(f) Adjustment of Contract Rents based on Cost Certification. (See section 1.4 for applicability of this paragraph.)

(1) Submission by Owner. Within 60 days after HUD accepts the project (or accepts the last stage, where applicable), or any extensions approved by HUD for good cause, the owner will certify the actual costs estimated in the Final Proposal or Purchase and Use Plan of the replacement cost, operating expenses, income, and debt service, and submit a cost certification including the certificate of an Independent Public Accountant to HUD in the manner and form prescribed by HUD, based on the following guidelines:

(i) Projects which involve HUD mortgage insurance will be subject to a cost certification requirements of the applicable insurance program;

(ii) For projects not insured by HUD, a simplified form of cost certification as prescribed by HUD will be completed and submitted.

(2) HUD Review. Cost certifications will be subject to review by HUD. As part of this review, the Owner and/or contractor may be required to submit additional documentation.

(3) Reduction of Contract Rents. If the Owner's certified costs provided in accordance with paragraph (f)(1) of this section, as approved by HUD, are less than the cost estimates provided in the Final Proposal or Purchase and Use Plan, the Contract Rents will be reduced accordingly.

(4) Reduction of Maximum Annual Commitment. If the Contract Rents are reduced pursuant to paragraph (f)(3) of this section, the maximum annual Contract commitment (and the maximum ACC commitment, in the case of Private-Owner/PHA projects) will be reduced. If Contract Rents are reduced based on certification after Contract execution, any overpayment since the effective date of the Contract will be recovered from the Owner by the CA.

(g) Adjustment of Contract Rents to Reflect Actual Cost of Tax Exempt Obligations Issued by a Participating State Agency Not Subject to Part 811 (See section 1.4 for applicability of this paragraph.) After the project is permanently financed, the financing agency shall submit a certification to HUD specifying the actual financing terms. If the actual debt service to the Owner under the permanent financing is lower than the anticipated debt service on which the Contract Rents were based, the initial Contract Rents or the Contract Rents then in effect shall be reduced commensurately and the amount of savings credited to the project account. The maximum annual Contract commitment (and the maximum annual ACC commitment, in the case of Private-Owner/PHA projects) will not be reduced.

(h) Adjustment of Contract Rents to Reflect Actual Cost for Projects Subject to Part 811. (See section 1.4 for applicability of this paragraph.)

(1) Submission by Owner and Financing Agency. The Owner and the financing agency shall submit certified statements as to the financing and other costs as required by Part 811 prior to final endorsement. Based on the certified statements, HUD will determine whether any reduction in initial Contract Rents is required under Part 811. Promptly after HUD notification, the Owner and the financing agency agree to amend the Contract to reduce the initial Contract Rents to the extent required by HUD. See sections 2.3(b)(5) and (6) of the Agreement, as appropriate.

(2) Reduction of Maximum Annual Commitment. If the Contract Rents are reduced pursuant to paragraph (h)(1) of this section, the maximum annual Contract commitment(and the maximum ACC commitment, in the case of Private-Owner/PHA projects) will be reduced. If Contract Rents are reduced based on certification after Contract execution, any overpayment since the effective date of the Contract will be recovered from the Owner by the CA.

(i) Adjustment of Contract Rents Due to Property Tax Exemption or Similar Savings. The Contract Rents may be reduced to reflect real property tax exemption or similar savings where the initial Contract Rents were approved on the assumption that the project would not receive the benefit of tax abatement or similar savings. The Owner agrees to notify the CA in the event such a project begins to receive such an exemption or similar savings so that the initial Contract Rents or the Contract Rents then in effect may be reduced.

2.8 MARKETING AND LEASING OF UNITS.

(a) Compliance with Equal Opportunity Requirements. Marketing of units and selection of Families by the Owner shall be in accordance with the Owner's HUD-approved Affirmative Fair Housing Marketing Plan (if required), shown as an exhibit, and with all regulations relating to fair housing advertising. Projects shall be managed and operated without regard to race, color, religion, creed, sex, handicap, or national origin and in the case of previously HUD-owned projects in accordance with the tenant selection factors shown as Exhibit 6.

(b) Security Deposits. The Owner agrees to comply with applicable section 8 regulations and other requirements, as revised from time to time, regarding security deposits and to comply with all State and local law.

(c) Eligibility, Selection and Admission of Families.

(1) Except for those families in previously HUD-owned projects determined by HUD at the time of the sale of the project to be eligible for section 8, the Owner shall be responsible for determination of eligibility of applicants, selection of families from among those determined to be eligible, computation of the amount of housing assistance payments on behalf of each selected Family and of total Family contributions and recordkeeping in accordance with applicable HUD regulations and requirements.

(2) The Owner shall not charge any applicant or assisted Family any amount in excess of the total Family contribution except as authorized by HUD.

(3) In the initial renting of the Contract Units, the Owner must lease at least 30 percent to Very Low-Income Families (determined in accordance with HUD-established schedules and criteria). However, if this requirement cannot be met for substantial rehabilitation or previously HUD-owned projects because of families already residing in the project, HUD may permit the leasing of less than 30 percent of the units to Very Low-Income Families. Thereafter the Owner shall exercise best efforts to maintain (or achieve and maintain) at least 30 percent occupancy of the Contract Units by Very Low-Income Families. In addition, at all times, the Owner will use its best efforts to achieve leasing to Families with a range of incomes so that the average of incomes of all Families in occupancy is at or above 40 percent of the median income in the area.

(4) The Lease entered into between the Owner and each selected Family shall be on the form of Lease approved by HUD.

(5) (i) The Owner shall make a reexamination of Family income, composition, and the extent of medical or other unusual expenses incurred by the Family at least as often as required by HUD regulations or other requirements, and appropriate redeterminations shall be made by the Owner of the amount of Family contribution and the amount of housing assistance payment, all in accordance with applicable HUD regulations and requirements.

(ii) If a family reports a change in income or other circumstances that would result in a decrease of total family contribution between regularly scheduled reexaminations, the Owner, upon receipt of verification of the change, must promptly make appropriate adjustments in the total family contribution. The Owner may require in its lease that families report increases in income or other changes between scheduled reexaminations.

(iii) In connection with the reexamination, the Owner shall determine what percentage of Families in occupancy are Very Low-Income Families and what the average Family income is. If there are fewer than 30 percent Very Low-Income Families in occupancy, or the average income is below 40 percent of the median, the Owner shall report the fact to HUD and shall adopt appropriate changes in its admission policies.

(iv) A Family's eligibility for housing assistance payments continues until its total Family contribution equals the total housing expense for the unit it occupies. The termination of

rights under ... the ... of payments as a result of ... changes in income or other circumstances during the term of this Contract.

(6) Where fewer than 100 percent of the units in the project are covered by this Contract, assisted Families shall be dispersed throughout. At initial rent-up, the Owner shall lease the units identified in Exhibit 1 to eligible Families. Thereafter, the Owner may lease other units of appropriate size and type to eligible Families in accordance with Exhibit 1. For projects with units for both elderly and non-elderly Families, the respective family types may be grouped together.

(7) The Owner shall maintain as confidential all information relating to section 8 applicants and assisted Families, the disclosure of which would constitute an unwarranted invasion of personal privacy.

(d) Rent Redetermination after Adjustment in Utility Allowance. In the event that the Owner is notified of a CA determination approving or requiring an adjustment in the Utility Allowance applicable to any of the Contract Units, the Owner shall promptly make a corresponding adjustment in the amount of rent to be paid by the affected Families and the amount of housing assistance payments.

(e) Processing of Applications and Complaints. The Owner shall process applications for admission, notifications to applicants, and complaints by applicants in accordance with applicable HUD and PHA regulations and requirements and shall maintain records and furnish such copies or other information as may be required by HUD or the PHA.

(f) Review: Incorrect Payments. In making housing assistance payments to Owners, the PHA or HUD will review the Owner's determinations under this section. If as a result of this review, or other reviews, audits or information received by the PHA or HUD at any time, it is determined that the Owner has received improper or excessive housing assistance payments, the PHA or HUD shall have the right to deduct the amount of such overpayments from any amounts otherwise due the Owner, or otherwise effect recovery.

2.9 TERMINATION OF TENANCY OR SECTION 8 ASSISTANCE BY THE OWNER.

The Owner agrees not to terminate any tenancy of or assistance on behalf of an assisted Family except in accordance with all HUD regulations and other requirements in effect at the time of the termination, and any State and local law.

2.10 REDUCTION OF NUMBER OF UNITS FOR FAILURE TO LEASE TO ELIGIBLE FAMILIES.

(a) Limitation on Leasing to Ineligible Families. Except in the case of previously HUD-owned projects, the Owner may not at any time during the term of this Contract lease more than 10 percent of the assisted units in the project to families which are ineligible under section 8 requirements at initial occupancy without the prior approval of HUD. Failure on the part of the Owner to comply with this prohibition is a violation of the Contract and grounds for all available legal remedies, including specific performance of the Contract, suspension or debarment from HUD programs and reduction of the number of units under the Contract, as set forth in paragraph (b) of this section. (See also section 2.21.)

(b) Reduction for Failure to Lease to Eligible Families - New and Rehab Projects. If, at any time beginning six months after the effective date of the Contract, the Owner fails for a continuous period of six months to have at least 90 percent of the assisted units leased or available for leasing by families eligible under section 8 requirements at initial occupancy, HUD (or the PHA at the direction of HUD, as appropriate) may, on at least 30 days' notice, reduce the number of units covered by the Contract. HUD or the PHA may reduce the number of units to the number of units actually leased or available for leasing plus 10 percent (rounded up). This reduction, however, will not be made if the failure to lease units to eligible families is permitted in writing by HUD under paragraph (a) of this section.



HUD-52522D (8-80)

(c) Reduction --Previously HUD-Owned Projects. If, at any time beginning six months after the effective date of the Contract, the Owner fails for a continuous period of six months to have all of the assisted units leased or available for leasing by families eligible under section 8 requirements at initial occupancy, HUD may, on 30 calendar days' notice, reduce the number of Contract units to not less than the number of Contract units under lease, plus 10 percent of such number if the number is 10 or more, rounded up. Failure by the Owner to make a reasonable effort to lease the units to eligible Families shall be a violation of the Contract and grounds for all legal remedies including those specified in paragraph (a) and section 2.21.

(d) Restoration. HUD will agree to an amendment of the ACC or the Contract, as appropriate, to provide for subsequent restoration of any reduction made pursuant to paragraph (b) or (c) of this section if:

(1) HUD determines that the restoration is justified by demand,

(2) The Owner otherwise has a record of compliance with its obligations under the Contract, and

(3) Contract authority is available. (HUD will take such steps authorized by section 8(c)(6) of the Act as may be necessary to carry out its agreement.

2.11 NONDISCRIMINATION.

(a) General. The Owner shall not in the selection of Families, in the provision of services, or in any other manner, discriminate against any person on the grounds of race, color, creed, religion, sex, national origin, or handicap.

(b) Members of Certain Classes. The Owner shall not automatically exclude anyone from participation in, or deny anyone the benefits of, the Housing Assistance Payments Program because of membership in a class, such as unmarried mothers, recipients of public assistance, handicapped persons.

(c) Title VIII of the Civil Rights Act of 1968. The Owner shall comply with all requirements imposed by Title VIII of the Civil Rights Act of 1968, which prohibits discrimination in the sale, rental, financing and advertising of housing on the basis of race, color, religion, sex, or national origin, and any related rules and regulations.

(d) Title VI of the Civil Rights Act of 1964 and Executive Order 11063. The Owner shall comply with all requirements imposed by Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d. et seq.; the HUD Regulations issued thereunder, 24 CFR, Subtitle A, Part 1; the HUD requirements pursuant to these regulations; and Executive Order 11063 and any regulations and requirements issued thereunder, to the end that, in accordance with that Act, Executive Order 11063, and the regulations and requirements of HUD, no person in the United States shall, on the grounds of race, color, creed, or national origin, be excluded from participation in, or be denied the benefits of, the Housing Assistance Payments Program, or be otherwise subjected to discrimination. This provision is included pursuant to the regulations of HUD, 24 CFR, Subtitle A, Part 1 issued under Title VI of the Civil Rights Act of 1964, HUD regulations issued pursuant to Executive Order 11063 and the HUD requirements pursuant to the regulations. The obligation of the Owner to comply therewith inures to the benefit of the United States of America, HUD, and the FHA (where the CA is a FHA), any of which shall be entitled to invoke any remedies available by law to redress any breach or to compel compliance by the Owner.

(e) Section 504 of the Rehabilitation Act of 1973. The Owner shall comply with all the requirements imposed by section 504 of the Rehabilitation Act of 1973, as amended, and any related rules and regulations. Section 504 provides that no qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance. Accordingly, the Owner (1) shall not discriminate against any qualified handicapped person on the basis of handicap and (2) shall

cause to be incorporated into all contracts executed in connection with this project a provision requiring compliance with rules and regulations issued pursuant to section 504.

(f) Employees of Owner.

(1) In carrying out the obligations under this Contract, the Owner will not discriminate against any employee or applicant for employment because of race, color, creed, religion, sex, handicap or national origin. The Owner will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to race, color, creed, religion, sex, handicap or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.

(2) The Owner agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by HUD setting forth the provisions of this nondiscrimination clause. The Owner will in all solicitations or advertisements for employees placed by or on behalf of the Owner state that all qualified applicants will receive consideration for employment without regard to race, color, creed, religion, sex, handicap or national origin. The Owner will incorporate the foregoing requirements of this paragraph in all of its contracts for project work, except contracts for standard commercial supplies or raw materials, and will require all of its contractors for such work to incorporate such requirements in all subcontracts for project work.

(g) Age Discrimination Act of 1975. The Owner shall comply with any rules and regulations issued or adopted by HUD under the Age Discrimination Act of 1975, as amended, 42 U.S.C. 6101 et seq., which prohibits discrimination on the basis of age in programs and activities receiving Federal financial assistance.

2.12 COOPERATION IN EQUAL OPPORTUNITY COMPLIANCE REVIEWS.

The Owner and the PHA (where the CA is a PHA) agree to cooperate with HUD in the conducting of compliance reviews and complaint investigations pursuant to or permitted by all applicable civil rights statutes, Executive Orders, and rules and regulations.

2.13 TRAINING, EMPLOYMENT AND CONTRACTING OPPORTUNITIES FOR BUSINESSES AND LOWER INCOME PERSONS. (See section 1.4 for applicability of this section.)

(a) The project assisted under this Contract is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

(b) Notwithstanding any other provision of this Contract, the Owner shall carry out the provisions of section 3 and the regulations issued by HUD as set forth in 24 CFR, Part 135, and all applicable rules and orders of HUD issued thereunder prior to the execution of this Contract. The requirements of the regulations include, but are not limited to, development and implementation of an affirmative action plan for utilizing business concerns located within, or owned in substantial part by persons residing in, the area of the project; the making of a good faith effort, as defined by the regulations, to provide training, employment, and business opportunities required by section 3; and incorporation of the "section 3 clause" specified by section 135.20(b) of the regulations and paragraph (d) of this section in all contracts for work in connection with the project. The Owner certifies and agrees that it is under no contractual or other disability which would prevent it from complying with these requirements.

(c) Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders issued by HUD thereunder prior to execution of this Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner, its contractors and subcontractors, its successors and assigns. Failure to fulfill these requirements shall subject the Owner, its contractors and subcontractors, its successors, and assigns to the sanctions specified by this Contract, and to such sanctions as are specified by 24 CFR, Section 135.135.

(d) The Owner shall incorporate or cause to be incorporated into any contract or subcontract for work pursuant to this Agreement in excess of $50,000 cost, the following clause:

EMPLOYMENT OF PROJECT AREA RESIDENTS AND CONTRACTORS

"A The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that, to the greatest extent feasible, opportunities for training and employment be given lower-income residents of the project area, and contracts for work in connection with the project be awarded to business concerns which are located in, or owned in substantial part by persons residing in, the area of the project.

"B The parties to this Contract will comply with the provisions of section 3 and the regulations issued pursuant thereto by HUD as set forth in 24 CFR, Part 135, and all applicable rules and orders of HUD issued thereunder prior to the execution of this Contract. The parties to this Contract certify and agree that they are under no contractual or other disability which would prevent them from complying with these requirements.

"C The contractor will send to each labor organization or representative of workers with which he has a collective bargaining agreement or other contract or understanding, if any, a notice advising the labor organization or workers' representative of his commitments under this section 3 clause and shall post copies of the notice in conspicuous places available to employees and applicants for employment or training.

"D The contractor will include this section 3 clause in every subcontract for work in connection with the project and will, at the direction of the applicant for or recipient of Federal financial assistance, take appropriate action pursuant to the subcontract upon a finding that the subcontractor is in violation of regulations issued by HUD, 24 CFR, Part 135. The contractor will not subcontract with any subcontractor where it has notice or knowledge that the latter has been found in violation of regulations under 24 CFR, Part 135, and will not let any subcontract unless the subcontractor has first provided it with a preliminary statement of ability to comply with the requirements of these regulations.

"E Compliance with the provisions of section 3, the regulations set forth in 24 CFR, Part 135, and all applicable rules and orders of HUD issued thereunder prior to the execution of the Housing Assistance Payments Contract, shall be a condition of the Federal financial assistance provided to the project, binding upon the Owner, its contractors and subcontractors, its successors, and assigns. Failure to fulfill these requirements shall subject the Owner, its contractors and subcontractors, its successors, and assigns to those sanctions specified by the Housing Assistance Payments Contract, and to such sanctions as are specified by 24 CFR, Section 135.135."

(e) The Owner agrees that it will be bound by the above section 3 clause with respect to its own employment practices when it participates in federally assisted work.

2.14 FLOOD INSURANCE. (See section 1.4 for applicability.)

The Owner agrees that the project will be covered, during its anticipated economic or useful life, by flood insurance in an amount at least equal to the development or project cost (less estimated land cost) or to the maximum limit of coverage made available with respect to the particular type of property under the National Flood Insurance Act of 1968, whichever is less.

2.15 CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT. (See section 1.4 for applicability of this section.)

In compliance with regulations issued by the Environmental Protection Agency ("EPA"), 40 CFR, Part 15, pursuant to the Clean Air Act, as amended ("Air Act"), 42 U.S.C. 7401, et seq., the Federal Water Pollution Control Act, as amended ("Water Act"), 33 U.S.C. 1251, et seq., and Executive Order 11738, the Owner agrees:

(a) Not to utilize any facility in the performance of this Contract or any nonexempt subcontractor which is listed on the EPA List of Violating Facilities pursuant to section 15.20 of the regulations;

(b) Promptly to notify the CA of the receipt of any communication from the EPA indicating that a facility to be utilized for the Contract is under consideration to be listed on the EPA List of Violating Facilities;

(c) To comply with all the requirements of section 114 of the Air Act and section 308 of the Water Act relating to inspection, monitoring, entry, reports, and information, as well as all other requirements specified in section 114 of the Air Act and section 308 of the Water Act, and all regulations and guidelines issued thereunder; and

(d) To include or cause to be included the provisions of this Contract in every nonexempt subcontract and take such action as HUD may direct as a means of enforcing such provisions.

2.16 REPORTS AND ACCESS TO PREMISES AND RECORDS.

(a) The Owner shall furnish any information and reports pertinent to this Contract as reasonably may be required from time to time by HUD and the PHA (where the CA is a PHA).

(b) The Owner shall permit HUD and the PHA (where the CA is a PHA) or any of their duly authorized representatives to have access to the premises and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the Owner that are pertinent to compliance with this Contract, including the verification of information pertinent to the housing assistance payments.

2.17 DISPUTES.

(a) For Private-Owner/PHA Projects:

(1) Any dispute concerning a question of fact arising under this Contract which cannot be resolved by the PHA and the Owner may be submitted by either party to the HUD Field Office which will promptly make a decision and furnish a written copy to the Owner and the PHA.

(2) The decision of the Field Office will not be reviewable unless, within 30 calendar days from the date of receipt of the Field Office's determination, either party mails or otherwise furnishes to HUD a written appeal with written justification addressed to the Secretary of Housing and Urban Development. Both parties shall proceed diligently with the performance of the Contract and in accordance with the decision of the Field Office pending resolution of the appeal.

(b) For Private-Owner/HUD or PHA-Owner/HUD Projects:

Any dispute concerning a question of fact arising under this Contract which cannot be resolved by agreement between the HUD Field Office and the Owner may be submitted by the Owner to the Secretary of Housing and Urban Development. Both parties shall proceed diligently with the performance of the Contract and in accordance with the decision of the Field Office, pending resolution of the appeal.

2.18 INTEREST OF MEMBERS, OFFICERS, OR EMPLOYEES OF PHA, MEMBERS OF LOCAL GOVERNING BODY, OR OTHER PUBLIC OFFICIALS.

(a) No person or entity in the following classes shall have an interest, direct or indirect, in this Agreement or in any proceeds or benefits arising from it, during his or her tenure or for one year thereafter.

(1) any member or officer of the PHA (where it is the CA or the Owner), except where his or her interest is as tenant;

(2) (i) any employee of the PHA (where it is the CA or the Owner) who formulates policy or influences decisions with respect to the section 8 project;

(ii) any other employee of the PHA (where it is the CA or the Owner), except where his or her interest is as a tenant;

(3) any member of the governing body or the executive officer of the locality (city or county) in which the project is situated;

(4) any member of the governing body or executive officer of the locality (city or county) in which the PHA (where it is the CA or the Owner) was activated;

(5) any other State or local public official (including State legislators), who exercises any functions or responsibilities with respect to the section 8 project;

(6) any PHA (which is not the CA), where any of its members, officers, or employees has a personal interest in the project, including an interest by reason of membership on the board of the PHA which is the CA (except an employee who does not formulate policy or influence decisions with respect to the section 8 project may have an interest as a tenant).

(b) Members of the classes described in paragraph (a) who involuntarily acquire an interest in the section 8 program or in a section 8 project, or who had acquired prior to the beginning of their tenure any such interest, must disclose any interest or prospective interest to the PHA (where it is the CA or the Owner) and the HUD Field Office, and may, with appropriate justification, if consistent with State law, apply to the HUD Field Office (through the PHA where it is the CA) for a waiver. Any other requests for waivers of paragraph (a) must be referred to the HUD Headquarters, with appropriate recommendations from the Field Office, for a determination of whether a waiver will be granted.

(c) No person to whom a waiver is granted shall be permitted (in his or her capacity as member of a class described in paragraph (a)) to exercise responsibilities or functions with respect to an Agreement or a Contract executed, or to be executed, on his or her behalf, or with respect to an Agreement or a Contract to which this person is a party.

(d) The Owner shall insert in all contracts, subcontracts, and arrangements entered into in connection with the project or any property included or planned to be included in the project, and shall require its contractors and subcontractors to insert in each of the subcontracts, the provisions of paragraphs (a) through (d).

(e) The provisions of paragraphs (a) through (d) of this section shall not apply to a utility service if the rates are fixed or controlled by a governmental agency or applicable to the Depositary Agreement.

2.19 INTEREST OF MEMBER OF OR DELEGATE TO CONGRESS.

No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this Contract or to any benefits which may arise from it.

ASSIGNMENT, SALE OR FORECLOSURE.

(a) The Owner agrees that it has not made and will not make any sale, assignment, or conveyance or transfer in any fashion, of this Contract, the Agreement, the ACC (if applicable), or the project or any part of them or any of its interest in them, without the prior written consent of HUD and the PHA where it is the CA). However, in the case of an assignment as security for the purpose of obtaining financing of the project, HUD (and the PHA where it is the CA) shall consent in writing if HUD has approved the terms of the financing.

(b) The Owner agrees to notify HUD (and the PHA where it is the CA) promptly of any proposed action covered by paragraph (a) of this section. The Owner further agrees to request the prior written consent of HUD (and the PHA where it is the CA).

(c) (1) For purposes of this section, a sale, assignment, conveyance, or transfer includes but is not limited to one or more of the following:

(i) A transfer by the Owner, in whole or in part,

(ii) A transfer by a party having a substantial interest in the Owner,

(iii) Transfers by more than one party of interests aggregating a substantial interest in the Owner,

(iv) Any other similarly significant change in the ownership of interests in the Owner, or in the relative distribution of interests by any other method or means, and

(v) Any refinancing by the Owner of the project.

(2) An assignment by the Owner to a limited partnership, in which no limited partner has a 25 percent or more interest and of which the Owner is the sole general partner, shall not be considered an assignment, conveyance, or transfer. An assignment by one or more general or limited partners of a limited partnership interest to a limited partner, who will have no more than a 25 percent interest, shall not be considered an assignment, conveyance, or transfer.

(3) The term "substantial interest" means the interest of any general partner, any limited partner having a 25 percent or more interest in the organization, any corporate officer or director, and any stockholder having a 10 percent or more interest in the organization.

(d) The Owner and the party signing this Contract on behalf of the Owner represent that they have the authority of all of the parties having ownership interests in the Owner to agree to this provision on their behalf and to bind them with respect to it.

(e) Except where otherwise approved by HUD, this Contract, the Agreement, and the ACC (if applicable) shall continue in effect and housing assistance payments will continue in accordance with the terms of the Contract in the event:

(1) Of assignment, sale, or other disposition of the project or this Contract, the Agreement, or the ACC,

(2) Of foreclosure including foreclosure by HUD,

(3) Of assignment of the mortgage or deed in lieu of foreclosure,

(4) The PHA or HUD takes over possession, operation or ownership,

(5) The Owner prepays the mortgage.

(a) Rights of Owner if PHA Defaults under Contract (for Private-Owner PHA Projects).

(1) Events of Default. The occurrence of any of the following events, if the Owner is not in default, is defined as a default under the ACC:

(i) If the PHA fails to perform or observe any term or condition of this Contract;

(ii) If the Contract is held to be void, voidable, or ultra vires;

(iii) If the power or right of the PHA to enter into the Contract is drawn into question in any legal proceeding; or

(iv) If the PHA asserts or claims that the Contract is not binding upon the PHA for any such reason.

(2) Owner Request for HUD Determination of Default.

If the Owner believes that an event as specified in paragraph (a)(1) has occurred, and the Owner is not in default, the Owner may, within 30 days of the initial occurrence of the event:

(i) Notify HUD of the occurrence of the event;

(ii) Provide supporting evidence of the default and of the fact that the Owner is not in default; and

(iii) Request HUD to determine whether there has been a default.

(3) HUD Determination of Default and Curing of Default.

HUD, after notice to the PHA giving it a reasonable opportunity to take corrective action, or to demonstrate that it is not in default, shall make a determination whether the PHA is in default and whether the Owner is not in default. If HUD determines tha the PHA is in default and that the Owner is not, HUD shall take appropriate action to require the PHA to cure the default. If necessary for the prompt continuation of the project, HUD shall assume the PHA's rights and obligations under the Contract, including any funds. HUD shall continue to pay annual contributions with respect to the units covered by this Contract in accordance with the ACC and this Contract until reassigned to the PHA. All rights and obligations of the PHA assumed by HUD will be returned as constituted at the time of the return:

(i) When HUD is satisfied that all defaults have been cured and that the project will thereafter be administered in accordance with all applicable requirements, or

(ii) When the Contract is at an end, whichever occurs sooner.

(4) Enforcement by Owner. The provisions of this paragraph (a) are made for the benefit of the Owner, the lender, the PHA where it is the lender and then only in its capacity as lender, and the Owner's other assignees, if any, who have been specifically approved by HUD prior to the assignment. These provisions shall be enforceable by these parties against HUD by suit at law or in equity.

(b) Rights of PHA and HUD if Owner Defaults under Contract.

(1) Events of Default.

A default by the Owner under this Contract shall result if:

(i) The Owner has violated or failed to comply with any provision of, or obligation under, this Contract or of any Lease, including failure to correct any deficiencies

(ii) The Owner has asserted or demonstrated an intention not to perform some or all of its obligations under this Contract or under any Lease; or

(iii) For projects with mortgages insured by HUD or loans made by HUD, the Owner has violated or failed to comply with the regulations for the applicable insurance or loan program, with the insured mortgage, or with the regulatory agreement, or the Owner has filed any false statement or misrepresentation with HUD in connection with the mortgage insurance or loan.

(2) CA Determination of Default.

Upon a determination by the CA that a default has occurred, the CA shall notify the Owner and the lender, with a copy to HUD where the CA is a PHA, of

(i) The nature of the default,

(ii) The actions required to be taken and the remedies to be applied on account of the default (including actions by the Owner and/or the lender to cure the default), and

(iii) The time within which the Owner and/or the lender shall respond with a showing that all the required actions have been taken.

If the Owner and/or lender fail to respond or take action to the satisfaction of the CA (and HUD where the CA is a PHA), the CA shall have the right to take corrective action to achieve compliance, in accordance with paragraph (b)(3) or to terminate this Contract with HUD approval, in whole or in part, or to take other corrective action to achieve compliance in its discretion, or as directed by HUD (where the CA is a PHA).

(3) Corrective Actions.

Pursuant to paragraph (b)(2) of this section the CA, in its discretion or as directed by HUD (where the CA is a PHA), may take the following corrective actions either directly or in conjunction with or acting through a PHA:

(i) Take possession of the project, bring any action necessary to enforce any rights of the Owner growing out of the project operation, and operate the project in accordance with the terms of this Contract until such time as HUD determines that the Owner is again in a position to operate the project in accordance with this Contract. If the CA takes possession, housing assistance payments shall continue in accordance with the Contract.

(ii) Collect all rents and charges in connection with the operation of the project and use these funds to pay the necessary expenses of preserving the property and operating the project and to pay the Owner's obligations under the note and mortgage or other loan documents.

(iii) Apply to any court, State or Federal, for specific performance of this Contract, for an injunction against any violation of the Contract, for the appointment of a receiver to take over and operate the project in accordance with the Contract, or for such other relief as may be appropriate. These remedies are appropriate since the injury to the PHA and/or HUD arising from a default under any of the terms of this Contract could be irreparable and the amount of damage would be difficult to ascertain.

(iv) Reduce or suspend housing assistance payments.

(v) Recover any overpayments.

(4) HUD Rights.

(For Private-Owner/PHA projects where the PHA is the lender.)

(i) Notwithstanding any other provisions of this Contract, in the event HUD determines that the Owner is in default of its obligations under the Contract, HUD shall have the right, after notice to the Owner, the trustee, if any, and the PHA giving them a reasonable opportunity to take corrective action, to proceed in accordance with paragraph (b)(3).

(ii) In the event HUD takes any action under this section, the Owner and the PHA hereby expressly agree to recognize the rights of HUD to the same extent as if the action were taken by the PHA. HUD shall not have the right to terminate the Contract except by proceeding in accordance with paragraphs (b)(1), (2), and (3) of this section and with the ACC.

(c) Remedies Not Exclusive and Non-Waiver of Remedies. The availability of any remedy under this Contract or the ACC, where applicable, shall not preclude the exercise of any other remedy under this Contract or the ACC or under any provisions of law, nor shall any action taken in the exercise of any remedy be considered a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not constitute a waiver of the right to exercise that or any other right or remedy at any time.

2.22 RELATIONSHIP OF PARENT ENTITY PHA AS OWNER TO AGENCY OR INSTRUMENTALITY PHA UNDER PART 811.

The Parent Entity PHA agrees to perform the functions with regard to the Agency or Instrumentality PHA required by the HUD regulations pursuant to which the relationship between the two PHAs was established and to which HUD approved the Agency or Instrumentality PHA.