IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FOREST GLEN PROPERTIES, LLC | ) | CASE NO. 05-1006C |
| | ) | JUDGE WOLSKI |
| Plaintiff | ) | |
| | ) | DEPOSITION OF |
| vs | ) | |
| | ) | JOHN SCHUSTER |
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | ) | |
| | ) | |
| Defendant | ) | |

Deposition taken before me, Wendy A. Klein, Notary Public within and for the State of Ohio, on the 15th day of September, 2006, at 9:30 AM, pursuant to notice, taken at the law offices of Guarnieri & Secrest, 151 East Market Street, Warren, Ohio, to be used in accordance with the United States Rules of Civil Procedure or the agreement of the parties in the aforesaid cause of action pending in the United States Court of Federal Claims.

A P P E A R A N C E S

On Behalf of the Plaintiff:
Michael D. Rossi, Esquire
GUARNIERI & SECREST
151 East Market Street
P.O. Box 4270
Warren, Ohio 44482

On Behalf of the Defendant:
Andrew P. Averbach, Esquire
U.S. DEPARTMENT OF JUSTICE
Civil Division, Commercial Litigation Branch
1100 L Street, NW, Room 11012
Washington, DC 20530

Also Present:
Frederick D. Harris, M.D.
Allen George

# INDEX

DEPONENT -- JOHN SCHUSTER

## EXAMINATIONS


| | Page Number |
|---|---|
| Cross Examination By Mr. Rossi: | 8 |
| Recross Examination By Mr. Rossi: | 108 |


## EXHIBITS


| Exhibit Number | Page Number |
|---|---|
| Plaintiff's Exhibit 1 | 33 |
| Plaintiff's Exhibit 2 | 16 |
| Plaintiff's Exhibit 4 | 39 |
| Plaintiff's Exhibit 6 | 46 |
| Plaintiff's Exhibit 7 | 46 |
| Plaintiff's Exhibit 8 | 51 |
| Plaintiff's Exhibit 9 | 68 |
| Plaintiff's Exhibit 12 | 87 |
| Plaintiff's Exhibit 13 | 70 |
| Plaintiff's Exhibit 15 | 87 |
| Plaintiff's Exhibit 16 | 103 |
| Plaintiff's Exhibit 21 | 104 |

P R O C E E D I N G S

JOHN SCHUSTER

having been duly sworn according to law, on his oath, testified as follows:

CROSS EXAMINATION

BY MR. ROSSI:

Q. You're Mr. John Schuster?
A. That's correct.
Q. What is the spelling of that last name, C-H --
A. S-C-H-U-S-T-E-R.
Q. Where do you live, Mr. Schuster?
A. Avon, Ohio.
Q. Give me the year and place you graduated high school.
A. The year was 1984, the place was Midpark High School.
Q. Midpark High School, where?
A. It was Berea School District.
Q. Oh, Berea?
A. Yeah.
Q. Did you attend college?
A. Yes, I did.
Q. Did you graduate college?
A. Yes, I did.

visit.

Q. Okay. April of 2000?

A. That's correct.

Q. And you would have been senior project manager at that point?

A. That is correct.

Q. Was that your first involvement with the -- Lakeview Gardens, is what we're talking about. That's the name of the housing, correct?

A. Uh huh.

Q. Did you have any experience with Lakeview Gardens before that April of 2000 site visit?

A. I was aware that the case was going on, but I was not the senior project manager that was assigned to the case.

Q. Okay. Now, when you say "the case," what does that mean for me? That there was a dispute going on?

A. The project. I knew the facts as to there was an ownership dispute that was in court, and I knew that the REAC inspection had come out.

rhetorical question. Never mind that. Do you know a Rick Boley?
A. Yes.
Q. Who is Rick Boley?
A. He was a project manager.
Q. Out of the Cleveland office?
A. Yes.
(PLAINTIFF'S EXHIBIT 4 MARKED)
Q. Would you look at Plaintiff's Deposition Exhibit 4, please? And basically -- well, take a look first. It's not fair to --
A. Okay.
Q. You know who Stacey Polk is, don't you?
A. Yes.
Q. At least by now.
A. Yeah.
Q. At the time, she was the landlord's attorney, whatever that means.
MR. AVERBACH: Objection.
Q. Or Solo or Dr. Harris' attorney or -- are we in agreement here?
A. Someone's attorney.
Q. Who did you think she was?
A. She represented the owner.

A. I believe, yeah.
Q. And Mr. Boley got one of those for Lakeview Gardens signed by the receivers?
A. Yes, but --
Q. Or at least it appears that way?
A. But it was incomplete.
Q. And that's what the rest of the letter says.
MR. AVERBACH: I don't think that that's a question, unless you want him to answer what's on the --
MR. ROSSI: I'll withdraw it.
Q. Do you know -- okay. It's incomplete because the TIN wasn't submitted for the receiver, correct?
A. Correct.
Q. Is that the only reason it wasn't accepted, or it was flawed?
MR. AVERBACH: To your knowledge.
A. Yes.
Q. Okay. Do you know, or can you tell me why Mr. Boley would ask for the receiver's TIN?

themselves.
Q. All right. I'll play devil's advocate. Mr. Schuster, why in the world would Mr. Morton have to write this May 10, or May 16 -- May 10, 2000 letter to Stacey Polk after he already made himself clear to Betty Butler on March 23? I'm trying to figure out what's going on here.
MR. AVERBACH: I'll object on the grounds that it calls for speculation, but you can answer his question.
Q. Were these people just squeaky wheels and they're trying -- they're trying to explain again why?
A. On the advice of counsel and in the Enforcement Center, it's -- they recommend that the field office do another verification of condition before we do the termination of our -- terminate a contract. This -- and that's -- that's why this letter went out.
Q. Are you telling me that Mr. Morton didn't mean it in Exhibit 8?

MR. AVERBACH: Objection. Calls for speculation.
A. I don't know.
Q. He says "You're done."
MR. AVERBACH: Is there a question?
Q. Was there -- did they have -- after March 23, '00, are you telling me that this landlord, whoever it was, had another chance to make it right?
MR. AVERBACH: Objection. Calls for a legal conclusion.
A. It's possible that the REAC inspection score might not actually be a good indicator with regards to the physical condition.
Q. And why would that be?
A. Because the program was just starting, and we had large variances between scores.
Q. So, the F could have been a C?
MR. AVERBACH: Objection. Vague.
MR. ROSSI: It's not vague to him. He knows what I mean.

these people? I mean, I'm trying to --

MR. AVERBACH: I'll object to the extent that it calls for a legal conclusion.

Q. Is this the formal disposition of this appeal, or does this just describe a process where you tried to work with the landlord, but the tenants' interests are superior?

MR. AVERBACH: Same objection. You can answer the question --

Q. Based on your 16 years in the department.

A. I think, based on my experience, we were trying to work with the owners to try and come up with a reasonable solution so that the tenants don't have to have a burdensome -- you know, to move out and then have to relocate, and things like that. I don't believe this necessarily fell in the procedural time frames. It was more of like a we'll work with you.

Q. Okay. But you told the tenants they're

REPORTER'S CERTIFICATE

I, Wendy A. Klein, a Notary Public within and for the State of Ohio, commissioned and qualified, do certify that JOHN SCHUSTER was duly sworn to testify the truth, that this deposition was written in the presence of the witness and by me transcribed, and that the deposition was taken at the time and place in the notice specified. I certify that I am not a relative, employee, or attorney for the parties in this action; I am not a relative or employee of an attorney for the parties in this action; I have no financial interest in this action; and I am not, nor is the firm with which I am affiliated, under a contract as defined in Civil Rule 28(D). I further certify that the foregoing is a complete transcript of all the proceedings had in this deposition, as written in the presence of the witness at the time of this deposition.

I have set my hand and Seal of Office at Warren, Ohio, this 13th day of December, 2006.

Wendy A. Klein, Notary Public
My Commission Expires 1-16-07