U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

CLEVELAND AREA OFFICE
THE RENAISSANCE ON PLAYHOUSE SQUARE
1350 EUCLID AVENUE, SUITE 500
CLEVELAND, OHIO 44115-1815

STEVEN L. BRADLEY
SYNEBERT & MAREIN
ATTORNEYS AT LAW
222 LEADER BUILDING
526 SUPERIOR AVENUE
CLEVELAND, OHIO 44114-1210

JAN 1 4 2000

Dear Mr. Bradley:

SUBJECT: Receivership/Contract Renewal
Project No. Non-Insured/Section 8# OH12-E000-003
Lakeview Gardens
Cleveland, Ohio

As the Receiver for Lakeview Gardens, you are being offered a 120 day renewal for the Housing Assistance Payments (HAP) Contract for that property. Four (4) copies of that subsidy contract are being sent separately. They should be signed and returned to the Cleveland HUD Office following your receipt. This 120 day renewal has an effective date of January 14, 2000.

During this 120 day renewal period, the Cleveland Multifamily Program Center (Cleveland HUD Office) hopes to approve the new owner and management agent when we receive proper information which permits us to identify those entities. All required documents will have to be submitted.

Additionally, in order to evaluate ownership and management's capacity to provide decent, safe, and sanitary, long-term housing at Lakeview Gardens, we are requiring the following:

1. a date when Lakeview Gardens becomes TRACS compliant.

2. a favorable improvement in the score on the upcoming (February 2, 2000) REAC Physical Inspection.

3. the Taxpayer Identification Number (TIN) be provided for the Direct-Deposit form in our possession for the receiver.

PLAINTIFF'S DEPOSITION EXHIBIT 1

4. the results of the unit inspections performed by ownership and/or management.

5. your Plan of Action which details when and how repairs will be completed and their source of funding.

In addition, Mr. Eric Moore from the Chicago HUD Enforcement Center plans to visit Lakeview Gardens between February 2 - 4, 2000. During Mr. Moore's visit in Cleveland, we would like both Stacey Polk and Steven Bradley to meet here at the Cleveland HUD Office to discuss with Eric Moore and the Cleveland staff where we are going with Lakeview Gardens.

The reason for evaluating is to help us determine whether we will need to issue vouchers and to give residents enough time to relocate.

Finally, please provide this Office with a copy of legal documents generated by the court order which created the receivership. Please provide us with documents which describe the responsibilities the receiver has towards the property known as Lakeview Gardens. Your assistance in this matter is greatly appreciate. Should you have questions, please contact Mr. Rick Boley of this Office at (216) 522-4058, Ext. 7171.

Sincerely,

Dennis G. Morton
Director
Cleveland Multifamily Program Center

cc: Stacey Polk

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
Office of Housing, Federal Housing Commissioner

# HOUSING ASSISTANCE PAYMENTS RENEWAL CONTRACT

## HUD as Contract Administrator

SECTION 8 PROJECT NUMBER: OH12-E000-003.

SECTION 8 PROJECT NUMBER OF EXPIRING CONTRACT (if different): N/A.

FHA PROJECT NUMBER: (if applicable) NA.

This HOUSING ASSISTANCE PAYMENTS CONTRACT ("Contract") is entered into between the U.S. Department of Housing and Urban Development ("HUD") and STEVEN L. BRADLEY, the court appointed Receiver: Per Case #372525 (dated August 26, 1999) (copy attached), pursuant to the United States Housing Act of 1937, 42 U.S.C. 1437 et seq. The purpose of this Contract is to provide housing assistance payments on behalf of Eligible Families ("Families") leasing decent, safe and sanitary units from the Owner.

→ OR MARK MAREII RTC 10-20

Previously, HUD and the Owner entered into a Housing Assistance Payments Contract ("Expiring Contract") to provide section 8 assistance to the Owner for eligible families living in LAKEVIEW GARDENS ("Project").

This Expiring Contract expires on SEPTEMBER 13, 1999 (STAGE 2)

HUD and the Owner desire to renew for the term specified below the Expiring Contract EXCEPT for the **Contract Rent and Rent Adjustment Provisions.**

**THEREFORE, HUD and the Owner hereby agree as follows:**

1. This Contract provides Housing Assistance Payments to the Owner for the term specified (see #4 & #5 below) at the contract rent levels listed in Exhibit A.

2. All terms of the Expiring Contract are renewed except for those provisions relating to contract rents and rent adjustments.

3. There will be no rent adjustments during the term of this Contract.

4. The effective date of this Contract is SEPTEMBER 14, 1999**
**COMBINES STAGE 1 & 2**

5. This Contract expires on JANUARY 13, 2000.

6. The maximum amount of the commitment for housing assistance payments under this Contract is $70,000**. **120-DAY TERM OF CONTRACT**

7. The Owner warrants that it has the legal right to execute this Contract and to lease dwelling units covered by this Contract.

PENGAD-Bayonne, N.J. PLAINTIFF'S DEPOSITION EXHIBIT 2

8. The Owner warrants that the rental units to be leased under the terms of this Contract are in decent, safe and sanitary conditions, as defined by HUD.

9. Notwithstanding any provision to the contrary, HUD, by executing this contract, does not make any warranty and/or representation as to the condition of the rental units. Execution of this Contract by HUD is not an endorsement by HUD that the rental units are in decent, safe and sanitary condition, as defined by HUD.

10. It is a crime to knowingly make false statements to HUD on this form or any other similar form. Penalties upon conviction can include a fine and imprisonment. 18 U.S.C. 1001, 1010.

This Contract is hereby executed with respect to the contract units described in Exhibit A.

| | |
|---|---|
| United States of America<br>Secretary of Housing and<br>Urban Development | Owner: LAKEVIEW GARDENS, LTD. |
| (Signature) | (Signature) |
| By: Preston A. Pake, Jr., Director<br>Ohio Multifamily HUB | By: |
| Date: OCT 2 6 1999 | Date: 10-25-99 |

# EXHIBIT A

## IDENTIFICATION OF UNITS ("CONTRACT UNITS") BY SIZE AND APPLICABLE CONTRACT RENTS

PROJECT #: N/A CONTRACT #: OH12-E000-003

| NUMBER OF UNITS | NUMBER OF BEDROOMS | CONTRACT RENTS | UTILITY ALLOWANCE | GROSS RENT |
|---|---|---|---|---|
| ONE BEDROOM | 8 | $454 | $29 | $483 |
| ONE BEDROOM | 9 | $456 | $26 | $482 |
| TWO BEDROOM | 11 | $489 | $34 | $523 |
| TWO BEDROOM | 6 | $514 | $35 | $549 |
| THREE BEDROOM | 6 | $550 | $42 | $592 |

CONTRACT RENTS EFFECTIVE: 11/97

Phone (216) 522-4058, Ext. 7171 FAX (216) 522-4120

CLEVELAND HUD OFFICE
1350 EUCLID AVE., RM 500
CLEVELAND, OHIO 44115

Ex

| | |
|---|---|
| To: Stacey E. Polk | From: RICK BOLEY |
| Fax: 216-691-6018 | Pages: One |
| Phone: 216-691-6347 | Date: January 12, 2000 |
| Re: Direct Deposit Form | CC: |

☐ Urgent ☑ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

● Comments: The Direct Deposit Form received at the Cleveland HUD Office for Lakeview Gardens was signed by the court appointed receiver, Mr. Marein and Stephen L. Bradley. That is fine because the receiver is still acting in behalf of the owner because we have no evidence that Solo Ventures has been determined to be the owner.

The problem with the Direct Deposit form is that a Taxpayer Identification Number was not included for the receiver. No subsidy can begin to flow to the receiver until we have a TIN number for that receiver.

I am also FAXING this message to Mr. Steven Bradley. I just thought you should know what we need. We also need TRACS compliance as you have heard before.

Has the date for the REAC inspection of February 2, 2000 been confirmed by you? Please advise.

Thank you.

PENGAD-Bayonne, N.J. PLAINTIFF'S DEPOSITION EXHIBIT 4

**Stacey E. Polk**
**Attorney and Counselor at Law**

13110 Shaker Square, Suite 125
Cleveland, Ohio 44120

(216) 691-6347 Tel
(216) 691-6018 Fax

February 11, 2000

Dennis G. Morton
Director
Multifamily Program Center
U. S. Department of Housing & Urban Development (HUD)
The Renaissance Building
1350 Euclid Avenue, Suite 500
Cleveland, Ohio 44115

Re: Solo Ventures, LLC v. Y/A.W.A.R.E. Programs, Inc. and Diversity Institute, Inc., case no. 372525

Dear Mr. Morton:

Dear Mr. Morton:

I enclose for your review and file certified copies of documents verifying current ownership of the buildings located at 849, 043, 969, and 973 Lakeview Road, Cleveland, Ohio 44108. The following documents stem from the captioned case and reach current ownership:

1. Journal Entry of Partial Default Judgment – against Defendant Y/A.W.A.R.E. Programs, Inc., rescinding, nullifying and voiding the transfer from Y/A.W.A.R.E. Programs, Inc. to Diversity Institute, Inc., and re-vesting ownership in Y/A.W.A.R.E. Programs, Inc.;

2. Real Estate Conveyance Agreement by and between Y/A.W.A.R.E. Programs, Inc. and Solo Ventures, L.L.C. (original document);

3. Assignment of HUD Section 8 Contract OH12-E000-003 from Y/A.W.A.R.E. Programs, Inc., Assignor to Solo Ventures, L.L.C., Assignee (original with attached open consent document pending HUD approval);

PENGAD-Bayonne, N.J. PLAINTIFF'S DEPOSITION EXHIBIT J

4. Warranty Deed from Y/A.W.A.R.E. Programs, Inc., Grantor, to Solo Ventures, L.L.C., Grantee;

5. Warranty Deed from Solo Ventures, L.L.C. to Forest Glen Properties, L.L.C., and

6. Notice of HUD inspection to occur February 14, 2000; hand delivered with signed receipt.

Frederick D. Harris and Andrew Jackson (both of whom you met previously) have formed Forest Glen Properties, L.L.C. to be the ownership entity for the buildings.

The property manager for the site is Great Shore Management, L.L.C. (related party). Derrick Gant is the on-site manager.

Since gaining title to the Property, the new owner has invested time and resources to improve the condition of the property as well as to meet HUD's technical requirements of ownership and management. The majority of the unit assessments have been completed. The building systems repair and replacement issues are being addressed. The management should become TRACS compliant within the next ten business days. TRACS training is scheduled for next week. The owner's tax identification number has been provided and the Receivership account has been established. The MIO Plan is being developed.

If you have any questions or comments regarding this letter or enclosures, please contact me.

Sincerely yours,

Stacey E. Polk, Esq.

cc: Rick Boley (w/ enclosures)
Frederick D. Harris (w/out enclosures)
Andrew Jackson (w/out enclosures)
Steven L. Bradley, Receiver (w/out enclosures)

**Building Inspection Service, Inc.** phone: 215-357-8066 fax: 215-357-8067 e-mail: bisco@inspectpro.com

# NOTIFICATION OF EXIGENT AND FIRE SAFETY HAZARDS OBSERVED

Property ID #: 800016814 Inspection ID #: 90918 PIH #: Inspection Date: 2/14/2006

Property Name: LAKEVIEW GARDEN APARTMENTS Phone: (216) 541-5430 Agent phone: (216) 291-5181

Address: 849 LAKEVIEW AVE

City: CLEVELAND State: OH Zipcode: 44108

## PART 1 ... EXIGENT HEALTH AND SAFETY HAZARDS

**Air Quality**
A-- Propane/Natural Gas/Methane Gas Detected

**Electrical Hazards**
B-- Exposed Wires/Open Panels
C-- Water Leaks On or Near Electrical Equipment

**Emergency Equipment / Fire Exits / Fire Escapes**
D-- Emergency / Fire Exits / Blocked / Unusable Fire Escapes
E-- Blocked Egress / Ladders

**Gas / Oil Hot Water Heater Gas / Oil HVAC**
F-- Carbon Monoxide Hazard - Gas / Oil Fired Unit - Missing / Misaligned Chimney

* The Offices of Housing and Public Housing require all exigent hazards be mitigated immediately. The office of Housing requires a written report to be filed with the local office within 72 hours of the date of the inspection. All public housing agencies are requried to document activities in this area under both PHMAP and PHAS requirements for later evaluation by HUD.

The following items were observed and noted as Exigent Health and Safety hazards which require immediate attention. Use additional sheets if needed.

| Item Number | Site or Building Location | DU or CA Location | A | B | C | D | E | F | Comment(s) | Certificate** |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | | X | | | | | broken cover in basement | 04/12/06 |
| 2 | 2 | | | X | | | | | missing breakers basement, unit 3 Bedroom wires done | In |
| 3 | 3 | | | X | | | | | missing breakers covers Basement | Progress |
| 4 | 3 | | | X | | | | | unit 1 Bathroom | |
| 5 | | | | | | | | | | |

** Reserved for HUD Use.

## PART 2 ... FIRE SAFETY HAZARD

**Emergency Equipment / Fire Exits / Fire Escapes**
G-- Window Security Bars Prevent Egress
H-- Fire Extinguishers Expired

**Smoke Detectors**
I -- Missing/Inoperative

The following items were observed and noted as Fire Safety hazards which require immediate attention.

| Item Number | Site or Building Location | DU or CA Location | G | H | I | Comment(s) | Certificate** |
|---|---|---|---|---|---|---|---|
| 1 | 1 | | | | X | side hall, unit 2, unit 12, unit 13 | Done |
| 2 | 2 | | | | X | unit 2 | Done |
| 3 | 3 | | | X | X | basement, hall, unit 4+5+8 | Done except |

** Reserved for HUD Use.

Other Life-Threatening H/S Concerns Not Defined In Above Matrix.

| | |
|---|---|
| 1 | |
| 2 | |

STACEY E. POLK — Name of Owner / Agent's Representative (Please print legibly) — Date: 2/14/2006

[signature] — Signature of Owner / Agent's Representative

David Szalay — Inspector Name:

M36904 — Inspector ID #:

A copy of this notification will be provided to the appropriate local health/safety/fire code enforcement entity. Neither the inspector, the inspector's employer nor the Department of Housing and Urban Development assume any liability whatsoever expressed or implied that the above noted health and safety hazards constitute all of the health and safety deficiencies that may be present on the property. Any and all liability for the health and safety hazards noted above, as well as any health and safety hazards that may exist on the property but were not observed by the inspector, are the full and absolute responsibility of the property owner and not the inspector, the inspector's employer nor the Department of Housing and Urban Development.



PENGAD-Bayonne, N.J. PLAINTIFF'S DEPOSITION EXHIBIT 7

Building Inspection Service, Inc. phone: 216-357-8055 fax 216-357-8082 e-mail: blsco@inspectpro.com

# NOTIFICATION OF EXIGENT AND FIRE SAFETY HAZARDS OBSERVED

Property ID #: 800016814 Inspection ID #: 90918 PIH #: Inspection Date: 2/14/2000
Property Name: LAKEVIEW GARDEN APARTMENTS Phone: (216) 541-5430 Agent phone: (216) 291-5181
Address: 849 LAKEVIEW AVE
City: CLEVELAND State: OH Zipcode: 44108 -

## PART 1 . . . EXIGENT HEALTH AND SAFETY HAZARDS

**Air Quality**
A-- Propane/Natural Gas/Methane Gas Detected

**Electrical Hazards**
B-- Exposed Wires/Open Panels
C-- Water Leaks On or Near Electrical Equipment

**Emergency Equipment / Fire Exits / Fire Escapes**
D-- Emergency / Fire Exits / Blocked / Unusable Fire Escapes
E-- Blocked Egress / Ladders

**Gas / Oil Hot Water Heater Gas / Oil HVAC**
F-- Carbon Monoxide Hazard - Gas / Oil Fired Unit - Missing / Misaligned Chimney

* The Offices of Housing and Public Housing require all exigent hazards be mitigated immediately. The office of Housing requires a written report to be filed with the local office within 72 hours of the date of the inspection. All public housing agencies are requried to document activities in this area under both PHMAP and PHAS requirements for later evaluation by HUD.

The following items were observed and noted as Exigent Health and Safety hazards which require immediate attention. Use additional sheets if needed.

| Item Number | Site or Building Location | DU or CA Location | A | B | C | D | E | F | Comment(s) | Certificate** |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4 | | | | | | | X | Basement misaligned Chimney (flue) ✓ in PIP | Done |
| 2 | 4 | | | | | | | X | unit 6 missing flue ✓ | Done |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |

** Reserved for HUD Use.

## PART 2 . . . FIRE SAFETY HAZARD

**Emergency Equipment / Fire Exits / Fire Escapes**
G-- Window Security,Bars Prevent Egress
H-- Fire Extinguishers Expired

**Smoke Detectors**
I -- Missing/Inoperative

The following items were observed and noted as Fire Safety hazards which require immediate attention.

| Item Number | Site or Building Location | DU or CA Location | G | H | I | Comment(s) | Certificate** |
|---|---|---|---|---|---|---|---|
| 1 | 4 | | | X | | Basement | Done |
| 2 | 4 | | | | X | Back hall | Done |
| 3 | 4 | | | | X | unit 2, 3, 5, 6, 8 | Done |

** Reserved for HUD Use.

Other Life-Threatening H/S Concerns Not Defined In Above Matrix.

| | |
|---|---|
| 1 | |
| 2 | |

STACEY E. POLK — Name of Owner / Agent's Representative (Please print legibly)
2/14/2000 — Date:
David Szalay — Inspector Name:
[signature] — Signature of Owner / Agent's Representative
M36904 — Inspector ID #:

A copy of this notification will be provided to the appropriate local health/safety/fire code enforcement entity. Neither the inspector, the inspector's employer nor the Department of Housing and Urban Development assume any liability whatsoever expressed or implied that the above noted health and safety hazards constitute all of the health and safety deficiencies that may be present on the property. Any and all liability for the health and safety hazards noted above, as well as any health and safety hazards that may exist on the property but were not observed by the inspector, are the full and absolute responsibility of the property owner and not the inspector, the inspector's employer nor the Department of Housing and Urban Development.

Stacey E. Polk
Attorney and Counselor at Law

13110 Shaker Square, Suite 125
Cleveland, Ohio 44120

(216) 691-6347 Tel
(216) 691-6018 Fax

March 28, 2000

**VIA FACSIMILE**

Dennis G. Morton
Director
Multifamily Program Center
and
Ron Bailey
Senior Project Manager, Enforcement
U. S. Department of Housing & Urban Development (HUD)
The Renaissance Building
1350 Euclid Avenue, Suite 500
Cleveland, Ohio 44115

Re: Subsidy Contract, Projecct No. Non-Insured Section 8# OH12-E000-003
Correspondence dated March 23, 2000

Dear Messieurs:

On behalf of Forest Glen Properties, L.L.C. I hereby request a meeting to discuss the captioned matter. The findings and conclusions cited in the letter terminating the captioned contract raise genuine issues and concerns that Forest Glen Properties, L.L.C. seeks the opportunity to address.

We are available to meet with you as soon as possible. Please contact me to schedule a meeting at your earliest convenience.

I appreciate your consideration of this matter. I look forward to hearing from you.

Sincerely yours,

Stacey E. Polk, Esq.

cc: Forest Glen Properties, L.L.C.
Steven Bradley, Esq.
Mark Marcin, Esq.

PLAINTIFF'S DEPOSITION EXHIBIT 10
PENGAD-Bayonne, N. J.

March 29, 2000



Dennis G. Morton
Director
Cleveland Multi Family Program Center
U.S. Department of Housing & Urban Development

RE: SUBSIDY CONTRACT PROJECT NUMBER/SECTION 8 #0H12-E000-003
Via Fax#: 522-7151
Certified Mail

Dear Mr. Morton:

This letter is written in response to your letter dated March 23, 2000. Pursuant to our conversation this morning as I explained to you and as we have done numerous times in writing and communicating to your office, the new name for this property previously named Lakeview Gardens is Forest Glen Apartments, owned by Forest Glen Properties, L.L.C. I, Frederick D. Harris, M.D. and Andrew Jackson are the members of Forest Glen Properties, L.L.C. .

As you know, we have recently taken this property over formally in January where the title was finally transferred from Y/AWARE Programs, Inc. As you may or may not recall, we met in your office in August of 1999 to discuss the fact that there was an ownership dispute and that we had petitioned the court and received permission for a neutral Receiver to escrow the H.U.D. monies and manage the property until the ownership dispute was resolved. Those individuals, as you are aware, were Steven Bradley and Mark Marein, attorneys with Synenberg & Marein. We, at that meeting, were given a verbal extension for a contract during this period of time. A contract was later signed by Mr. Marein and given to you by my attorney Stacey Polk. In further execution of that contract, the receivers established a bank account and executed a direct deposit form provided by HUD for receipt of the monthly contract subsidy payments.

Periodic updates, (see attached), have been sent to your office and we have seen to it that the residents have had basic utilities such as heat and water, some of which we had to go to the extent of obtaining a court order to continue utilities which were threatening to be shut off due to non-payment of delinquent bills (see attached), as well as restore waste disposal collection, all a result of the previous owners'mismanagement and misuse of funds, prior to the appointment of the Receiver. The water bill alone at that time was over $20,000.00!

PENGAD-Bayonne, N.J.
PLAINTIFF'S DEPOSITION EXHIBIT
11

Upon taking over the property in January we have continued to daily upgrade the property and have invested more than $50,000.00 of our own money while patiently awaiting funds which were promised many months ago. Additionally, we have outstanding utility bills and taxes amounting to over $20,000.00. We have provided heat that was non existent in many of the suites, fixed plumbing, repaired lighting as well as provided new stoves and refrigerators for various suites. We have obtained the services of an exterminator who have been through our suites on more than one occasion starting in the Fall. We have secured a much needed security force and have assembled an onsite team including an onsite manager and rehabilitation contractors who work daily to attend to the residents' needs and to shore problems in every suite.

We were instructed to submit the rent rolls initially manually, but later instructed electronically by TRACS at which time we went out and bought the requisite software from Real Page (TRACS ID# 22425) and computer hardware and were finally able to, this week, be in position to transmit this information to you (a tedious process in itself). It was with these good faith efforts and understanding of a working relationship and contract that we undertook this process.

We have yet to receive a single dollar from the Department of Housing and Urban Development in spite of spending a number of our dollars in anticipation of reimbursement, based on your offices' representation which we relied upon to our detriment.

As you are aware, February 14, 2000 a property inspection, our first, was performed in the dead of winter and our property received a 26c with 25 exigent health and safety findings. The exigent circumstances have been completely addressed and we have appealed to Real Estate Association Center (REAC) for another evaluation to insure that we are in compliance with the same.

At this point we are simply requesting a meeting to share with you our improvement and financing plan and we pray you extend our contract for some minimal period, i.e., 120 days to afford us an opportunity to insure that we have met the contractual obligations of the REAC inspection. I understand your obligation in protecting the residents of this project and, in fact, have seen to it that the standards have been met.

This is to formally request a meeting with you, Mr. Bailey, as well as the receiver, Mr Bradley and/or Mr. Marein so we may address these issues and cut off any opportunities for misinformation. In addition, during our conversation today, you alerted me to the fact that you had been attempting to get someone to sign a contract "since September" and had considerable difficulty. I was not aware that the contract had not been signed nor that you were having difficulties getting the Receiver to cooperate . I hope that we be allowed to continue with this subsidy contract pending a satisfactory outcome from the REAC reinspection.

If there are any questions, please feel free to contact the undersigned. I have taken your recommendation and have contacted both the REAC help line who instructed me on the appropriate appeal steps which we have executed as well as spoken to the office of Portfolio

Management in Washington, D.C. to insure adequate follow up with the appeal. Mr Harris informed me that someone from your office could come by and perform an inspection while the formal REAC inspection is pending in order to insure that our representations are valid and to keep the subsidy contract intact. We appreciate your time and consideration.

Sincerely,

Forest Glen Properties, L.L.C.
By: Frederick D. Harris, M.D.

FDH/sp

cc: Walter Modzier, Acting Director, Chicago Department Enforcement Center
Preston Pace, Director, Ohio Multi Family Hub
Congresswoman Stephanie Tubbs-Jones
Steven Bradley, Esq
Mark Marein, Esq
Eric Ramsey, Project Manager, Washington D.C., Dept of H.U.D.
Stacey Polk, Esq
Andrew Jackson

*Frederick D. Harris, M.D., Inc.*
BOARD CERTIFIED IN INTERNAL MEDICINE

5 SEVERANCE CIRCLE, SUITE 505
CLEVELAND HEIGHTS, OH 44118
TELEPHONE: (216) 291-5151

26900 CEDAR RD.
BEACHWOOD, OH 44122
TELEPHONE: (216) 292-7575

11201 SHAKER BLVD., SUITE 220
CLEVELAND, OH 44104
TELEPHONE: (216) 229-6000

March 29, 2000

The Physical Inspection Manager
United States Department of Housing and Urban Development
1280 Maryland Avenue, SW suite 800
Washington DC 20024

RE: Forest Glen Properties, L.L.C.
Inspection ID # 90918/800016814
Date of inspection: 02/14/00

Dear Physical Inspection Manager:

This is a formal request for a technical review of the aforementioned property which was inspected on 02/14/00. We have made a number of improvements as well as addressed the exigent concerns. Attached please find a listing of such. Please expedite this inspection as soon as possible.

Sincerely,

Frederick D. Harris,
Member, Forest Glen Properties, L.L.C.

FDH/js

PLAINTIFF'S DEPOSITION EXHIBIT
12
PENGAD-Bayonne, N.J.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

Tel (312)353-5895 Fax (312)886-1405

MAY 16 2000

**BY FAX AND CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
#Z 232 144 877

Stacey Polk
Attorney at Law
Forest Glen, L.L.C./Solo Ventures
13110 Shaker Square, Suite 125
Cleveland, Ohio 44120

SUBJECT: Lakeview Gardens
Cleveland, Ohio
Section 8# OH12-E000-003

Dear Ms. Polk:

As was agreed among our respective clients at the April 14, 2000 meeting, at HUD's Cleveland Multifamily Housing Office, representatives of the Chicago Satellite Office Enforcement Center and the Cleveland Office visited the former Lakeview Gardens Apartments on April 26, 2000. The purpose of this visit was to determine whether the project met HUD's Physical Condition Standards and Inspection Requirements, 24 C.F.R. Part 5, Subpart G.

As you know, the project was last inspected by HUD's Real Estate Assessment Center (REAC) on February 15, 2000. It scored 26 points of a total possible 100 points, and was rated "c*" because twenty-five exigent, health and safety findings were also identified. Consistent with your clients' representations, the project, now known as Forest Glen Apartments, some improvements had been made to the project. However, and notwithstanding numerous notices to bring the project into compliance, the project clearly continues to fail to meet the decent, safe and sanitary conditions required by HUD. As examples, numerous exigent health and safety findings, such as exposed electrical wires in the basement and missing breakers, along with severe findings such as inoperable stoves, missing smoke detectors, and exposed heating coils, continue to plague the project. These deficiencies are material, have existed for many months, and constitute events of default of any Housing Assistance Payments (HAP) Contract with HUD; whether such HAP Contract is between HUD and the former project owner, or otherwise. The Management Improvement and Operating (MIO) Plan that was delivered at the April 14, 2000, meeting did not adequately address all the project's deficiencies, particularly in light of the dire physical condition of the property. Funding any MIO Plan through anticipated HAP Contract proceeds is unacceptable to HUD.

PLAINTIFF'S DEPOSITION EXHIBIT 13
PENGAD-Bayonne, N.J.

Accordingly, the HAP Contract for the project will not be assigned to the current owner and will not be renewed. In further protection of the tenants, the voucher process which has already begun, will continue. The current owner may be in a position to accept these vouchers if the units pass the housing standards of the Cuyahoga Metropolitan Housing Authority (CMHA) and the tenant elects to remain in the unit. However, and absent another lawful basis, the tenants' share of rent at the project may not be increased earlier than the 1-year anniversary of the last extended HAP Contract with the former project owner. Depending on the actions of the former court appointed receiver as described in the next paragraph, this 1-year anniversary is either September 13, 2000, or January 14, 2001.

As we also discussed at the April 14, 2000, meeting, with regard to the former court appointed receiver obtaining payments for the 120-day HAP Contract extension for the period September 14, 1999 to January 13, 2000, our office has not received a court order declaring that the receiver had authority to sign the HAP Contract extension on behalf of the former owner. The receiver must also submit proper requests for payment through TRACS. Those requirements are set forth in HUD Handbook 4350.3, Change 27, Appendix 11. If you do not already have this Handbook, it is available on the Internet or upon request to our office. HUD may then process the claims for that period.

We appreciate your efforts in these regards. Any further inquiries may be directed to Supervisory Team Leader Walter Mozdzierz at (312) 353-5895, Ext. 2059, or Enforcement Attorney Laura Arnolds at Ext. 2238.

Sincerely,

for Margarita Maisonet
Director
Chicago Departmental Enforcement Center

for Dennis G. Morton
Director
Cleveland Multifamily Program Center

cc: Steven Bradley

**Stacey E. Polk**
**Attorney and Counselor at Law**

13110 Shaker Square, Suite 125
Cleveland, Ohio 44120

(216) 691-6347 Tel
(216) 691-6)18 Fax

May 22, 2000

Walter Mozdzierz
Supervisory Team Leader
U. S. Department of Housing and Urban Development ("HUD")
Departmental Enforcement Center
77 West Jackson Boulevard, Suite 2207
Chicago, Illinois 60604-3507

Re: Forest Glen Apartments, HUD Section 8 Contract No. OH12-E000-003

Dear Mr. Mozdzierz:

Forest Glen Porperties, L.L.C. hereby appeals the Departmental Enforcement Center's decision not to assign the captioned contract to Forest Glen Properties, L.L.C. or to renew that contract. This appeal is based upon the following grounds: first, the letter dated May 10, 2000 announcing HUD's decision not to assign or renew the contract contains several material misstatements of fact, beginning with the stated purpose of the site visit, conducted at Forest Glen Properties, L.L.C.'s request; second, the captioned contract and its extension (in which the owner of record did not participate as it was divested of transaction rights regarding the Contract per Court order) are subject to Housing Notice H 99-08 which requirements have not been complied with in letter or spirit; and third, HUD's refusal to assign or renew the captioned contract with an owner that has taken initiative to make improvements to its property and has shown capacity and willingness to bring the property into compliance represents arbitrary, capricious or disparate treatment of that owner among similarly situated owner(s).

The Court order referenced in HUD's letter was provided with correspondence sent to HUD on May 10, 2000. The Order was obtained by the court appointed Receivers who remain in place.

Forest Glen Properties hereby requests a meeting with your office, the Hub Director, and Ms. Maisonet regarding the points raised above. Further, Forest Glen Properties, L.L.C. requests a report of the findings of the April 26, 2000 site visit as Forest Glen Properties, L.L.C. disagrees

PENGAD-Bayonne, N.J. PLAINTIFF'S DEPOSITION EXHIBIT 14

**Stacey E. Polk**

Walter Mozdzierz
Supervisory Team Leader
U. S. Department of Housing and Urban Development ("HUD")
Departmental Enforcement Center
May 22, 2000
Page Two

with their summary in the May 10, 2000 letter as inaccurate and misstated. Further, Forest Glen Properties, L.L.C. requests interim relief available to owners pending appeal of decisions not to renew Section 8 Contracts. I look forward to hearing from you

Sincerely yours,

Stacey E. Polk, Esq.

cc: Frederick D. Harris, M.D.
Andrew Jackson
Milton Jefferson, Esq.
Steven L. Bradley, Esq.
Mark B. Marein, Esq.
Margarita Maisonet
Preston Pace
Dennis G. Morton
The Honorable Stephanie Tubbs Jones
The Honorable Dennis Kucinich

**U.S. DI RTMENT OF HOUSING AND URBAN DE LOPMENT**

DEPARTMENTAL ENFORCEMENT CENTER
Chicago Satellite Office
77 W. Jackson Blvd., Suite 2207
Chicago, Illinois 60604-3507

Tel (312)353-5895 Fax (312)886-1405

June 16, 2000
CERTIFIED RETURN RECEIPT

Stacey E. Polk
13110 Shaker Square, Suite 125
Cleveland, OH 44120

Subject: Request for Meeting
Lakeview Gardens

Dear Ms. Polk:

Our office is in receipt of your letter dated May 30, 2000, requesting another meeting which our office will construe as an appeal.

On March 23, 2000, HUD sent notice that the HAP contract would not be renewed. By letter dated March 28, 2000, your client requested a meeting. On April 14, 2000, representatives from HUD's Cleveland Office, together with representatives of HUD's Chicago Departmental Enforcement Center, met with you, your clients, co-counsel, and the Court-appointed Receivers, at your clients' request, for more than three hours. We discussed the project's poor physical condition; HUD's concern for the tenants' well-being; the several transfers of ownership; your clients' desire to renew the HAP contract; your clients' unacceptable Management Improvement and Operating Plan that was tendered at that meeting which was wholly-funded by HAP contract payments; your clients' alternative thoughts to evict current tenants if the HAP contract was not renewed; and, the Receivers' request for HAP contract payments during a portion of the Receivers' tenure for the project.

Because you and your clients felt that significant improvement had been made to the project's physical condition since the February REAC inspection, HUD agreed, at your clients' request, to confirm the status of the physical condition of the property against that inspection. As HUD wrote you in its May 10, 2000 letter, that visit again confirmed that the project still failed to meet decent, safe and sanitary conditions and the letter advised that there would be no renewal of the HAP contract. Accordingly, your client had ten days to appeal that decision. Since more than ten days passed and your letter purports to discuss the same issues and proposals, your request to meet is denied.

The Department continues to diligently work with the Project's Receiver, Attorneys Bradley and Marein, to obtain all necessary information to process HAP payments for the period September 14, 1999, to January 14, 2000. Your clients' inquiries to the Department in this regard may be best addressed to the Receiver since the Receiver is the party the Ohio Court has authorized.

PLAINTIFF'S DEPOSITION EXHIBIT 15
PENGAD-Bayonne, N. J.

Your request for findings of the Department's April 26, 2000, site visit, along with photographs taken at the project, will be treated as a request under the Freedom of Information Act. As such, a formal response regarding that request and any fees associated with the request will be forthcoming.

Last, please direct any further correspondence or inquiries that you, your co-counsel, or your clients may have in this regard to Enforcement Attorney Laura Arnolds at (312) 353-6236, ext. 2238.

Sincerely,

Margarita Maisonet

Margarita Maisonet, Director
Chicago Satellite Office
Departmental Enforcement Center

cc: Forest Glen
Steven Bradley
Cleveland Multifamily Office

Stacey E. Polk
Attorney and Counselor at Law

13110 Shaker Square, Suite 125
Cleveland, Ohio 44120

(216) 691-6347 Tel
(216) 691-6018 Fax

June 27, 2000

**VIA OVERNIGHT MAIL, CERTIFIED MAIL, RETURN RECEIPT REQUESTED AND REGULAR MAIL**

Laura Arnolds, Esq.
U. S. Department of Housing and Urban Development ("HUD")
Departmental Enforcement Center
77 West Jackson Boulevard, Suite 2207
Chicago, Illinois 60604-3507

Re: Forest Glen Apartments, HUD Section 8 Contract No. OH12-E000-003

Dear Ms. Arnolds:

Forest Glen Properties, L.L.C. ("Forest Glen") responds to the June 16, 2000 letter received on June 19, 2000. That letter responds to my letter on Forest Glen's behalf of May 30, 2000 appealing the decision not to renew or assign the Section 8 Contract No. OH12-E000-003. Forest Glen maintains its objections and appeal, and refutes HUD's attempt to deny Forest Glen's appeal as invalid and improper. HUD's bases for refusing to consider the appeal are fundamentally flawed and cannot stand.

First, in its June letter, HUD failed to state that the letter was a final decision of HUD or that the letter allowed for ten days within which to appeal. These relevant facts provide the foundation necessary to evaluate the timeliness of an appeal. HUD cannot now hold Forest Glen to a standard that HUD failed to state in its decision letter. In that HUD's May letter was replete with misrepresentations and misstatements, reasonable time was spent researching the points raised for appeal before submitting them to HUD. HUD's various documents reflect that where a decision has not been announced as final and requiring ten days to appeal, that an owner may object to findings within thirty (30) days. HUD's June letter states that it received Forest Glen's objections on or about June 9, 2000, *within thirty (30) days of HUD's May letter.*

Second, HUD's June letter claims that Forest Glen's response "purported to discuss the same issues and proposals" defies the objections contained on the face of the letter. The facts cited in the response are issues ripe for appeal. *By definition, Forest Glen's issues raised represent new matters for discussion in that Forest Glen's objections refer to matters that had yet to occur at the time of the previous meeting.*

PLAINTIFF'S DEPOSITION EXHIBIT 16
PENGAD-Bayonne, N.J.

Stacey E. Polk

Laura Arnolds, Esq.
U. S. Department of Housing and Urban Development ("HUD")
Departmental Enforcement Center
June 27, 2000
Page Two

The issues raised are restated here:

Objection 1) HUD's letter of May 10, 2000 contains material misstatements of fact and misleading statements. For example, *without limitation:* (a) "Funding any MIO Plan through anticipated HAP Contract proceeds is unacceptable to HUD[;]" a senior executive at HUD's local field office recommended that Forest Glen include the HAP Contract funds in the MIO Plan; (b) the site "visit" was a forty unit mandatory inspection, conducted in a manner that was inconsistent with HUD's prior representations of scope, time, and breadth – and making unannounced, onsite demands of tenants in a manner that may be considered intimidating.

Objection 2) The captioned Contract and its extension ... are subject to HUD requirements and guidelines with which HUD has not complied in letter or in spirit. Ms. Arnolds please recall that you were present when I request for an executed copy of the contract that had not previously been provided despite my previous written request. Therefore the contract based objection that Forest Glen has raised represents a new issue for discussion in that HUD's having withheld the contract left Forest without documentation sufficient to form its assertion.

Objection 3) The refusal [of May 10, 2000] to renew or assign the Contract has been made without giving the owner the benefit of a specified score of the property with itemized findings of its outstanding repairs,.... HUD conceded this point by referring Forest Glen to its FOIA officer. However, Forest Glen construes this referral as an attempt to effectively thwart its appeal or delay its efforts to

Objection 4) HUD's refusal to assign or renew the captioned contract with an owner that has taken initiative to make improvements to its property and has shown capacity and willingness to bring the property into compliance represents arbitrary, capricious or disparate treatment of that owner among similarly situated owner(s). Forest Glen's issue regarding the treatment of owners of other property(ies) that has(ve) earned a similar Real Estate Assessment Center score has not been raised previously. This point reaches HUD's rejection of a contract without a report of findings from the "visit" of April 26, 2000. This treatment of a new owner whose effort have shown significant improvement to its property is an egregious omission.

Stacey E. Polk

Laura Arnolds, Esq.
U. S. Department of Housing and Urban Development ("HUD")
Departmental Enforcement Center
June 27, 2000
Page Three

Third, HUD's June letter misstates the topics covered in the meeting. The MIO Plan was reviewed briefly by HUD officials who stated that they would review it more thoroughly and get back to Forest Glen. At no time during the meeting was that Plan termed unacceptable. Had it been so described, Forest Glen would have addressed that point particularly since the official recommending the inclusion of the HAP payments into the Plan was present at the meeting. It is intriguing that none of Forest Glen's issues presented to HUD in that meeting relating to HUD's under-servicing of Forest Glen Apartments are referred to in HUD's June letter.

Fourth, HUD's June letter denying Forest Glen's request for a meeting with the Hub Director defies HUD's own documents that provide for such a meeting at an owner's request. Forest Glen construes HUD's denial of its appeal as an infringement of its rights and of its reasonable request. Apparently, HUD has attempted to summarily dismiss Forest Glen when Forest Glen represents the most improvement at Forest Glen Apartments, formerly known as Lakeview Gardens in the shortest time of ownership.

If Forest Glen's objections in its May 30, 2000 letter appear repetitive perhaps that appearance follows HUD's continually objectionable treatment of this owner throughout the time that it has owned its property. HUD continues its adversarial posture with an owner that has improved its property significantly without HUD's assistance for financing or for asset service. HUD's statement

Fifth, HUD's June letter concedes that it did not supply a report of findings to support its decision. Forest Glen construes HUD's treating this request for findings as a Freedom of Information Act request as unresponsive and as a delay of releasing materials that may assist Forest Glen to further appeal this matter or that may contribute to Forest Glen's ongoing corrective planning for the property.

Sixth, contrary to HUD's interpretation in its June letter, Forest Glen's questions concerning processing of TRACS payments are not restricted to the Receivers. The orders of Receivership and attendant powers *exclude the defendants* in the case form having transactional authority regarding the property or other conact with it; the orders do not legally or operationally exclude Forest Glen from contacting HUD. (as Forest Glen has never been affiliated with Defendants in Solo Ventures v. Y/A.W.A.R.E. Programs, Inc. et al.,case no. 372525) Further, as you know, the Receivers are off site. Forest Glen and its on site manager, Great Shore Management, L.L.C. have access to the information necessary to meet HUD's processing requirements.

Stacey E. Polk

Laura Arnolds, Esq.
U. S. Department of Housing and Urban Development ("HUD")
Departmental Enforcement Center
June 27, 2000
Page Four

Seventh, HUD's claims of protecting tenants contrasts with its actions in supporting new ownership at Forest Glen. The "three hour" meeting with Forest Glen did not address the issues cited above. As that was the *first* meeting since new ownership began, Forest Glen construes that statement as a concession of the level of service and support given to a low scoring property taken over by new ownership and management. It does not comport with HUD's own requirements for asset servicing. If indeed HUD desires to "[protect] the tenants," then a meeting with the Hub Director is reasonable and favorable.

Ms. Arnolds, I prefer to believe that Forest Glen and HUD seek the same goal of providing quality housing to the tenants at Forest Glen Apartments. Forest Glen's objections and request for appeal and Hub Director meeting, as restated here, represent Forest Glen's request that HUD meet Forest Glen in the spirit of teamwork regarding this property. If HUD shares this goal and spirit, then I may anticipate a positive response to this letter. I look forward to hearing from you.

Sincerely yours,

Stacey E. Polk, Esq.

cc: Frederick D. Harris, M.D.
Andrew Jackson
Milton Jefferson, Esq.
Steven L. Bradley, Esq.
Mark B. Marcin, Esq.
Margarita Maisonet
Laura Arnolds, Esq.
Preston Pace
Dennis G. Morton
The Honorable Stephanie Tubbs Jones
The Honorable Dennis Kucinich