# In the United States Court of Federal Claims

No. 05-1006C
(Filed April 3, 2013)
NOT FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**FOREST GLEN PROPERTIES, LLC et al.,**

Plaintiffs,

v.

**THE UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**ORDER**

Pending before the Court is the government's renewed motion to dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), or, in the alternative, for summary judgment under RCFC 56. The Court has found this to be a rather confounding matter, with facts perhaps better suited for a law school exam. Rather than recount in detail the more labyrinthine aspects of the case --- many of which are discussed in an earlier opinion, *see Forest Glen Props., LLC v. United States*, 79 Fed. Cl. 669 (2007) --- in light of the long delay during which the Court has puzzled over the matter, the Court will attempt in this order to focus on only that which is essential to dispose of the pending motion.

The original plaintiff in this case, Forest Glen Properties, LLC, filed the complaint on September 16, 2005, seeking the recovery of payments allegedly owed by the U.S. Department of Housing and Urban Development ("HUD") under two renewals of a Housing Assistance Payments ("HAP") contract. *See* Compl. at 1-2. The HAP contract concerned subsidized apartments for lower-income families at an apartment complex once known as Lakeview Gardens, *see* App. to Def.'s Renewed Mot. ("Def.'s App.") at 4-31, which Forest Glen obtained on January 29, 2000. *Id*. at 113-16. The contract expired on September 13, 1999, but was retroactively renewed for 120 days on October 25, 1999. Attach. to Compl. at 1-3. The renewal contract was executed by state court-appointed receivers, Mark Marein and Steven L. Bradley, in place, apparently, of the owners at the time, Y/A.W.A.R.E. Programs, Inc. *Id.* The receivers were appointed at the request of Solo Ventures, LLC, *see* Def.'s App. at 34-35 --- which subsequently obtained the apartment complex from Y/A.W.A.R.E. on December 21, 1999, *id.* at

100-07, and later transferred the property to Forest Glen. *Id*. at 113-16. A second 120-day renewal contract was offered to the receivers on January 14, 2000, Attach. to Compl. at 4-5, which Forest Glen alleged was accepted and performed. Compl. at 2. In its complaint, Forest Glen maintained that the receivers assigned it the underlying HAP contract, *id.* at 1, which the Court takes to mean the renewal contracts (which apparently incorporated all of the terms of the initial HAP contract except for those relating to rent levels and rent adjustment, *see* Attach. to Compl. at 1).

The government moved to dismiss the case for lack of subject-matter jurisdiction, arguing among other things that HUD's prior written consent was not obtained for any assignment of the first renewal contract, contrary to a term of the HAP contract, and that the offer of the second renewal contract was never accepted. *See* Def.'s Mot. to Dismiss at 8. Forest Glen responded on January 17, 2007, that it was "currently formalizing its 'assignee' status." Pl.'s Mem. Contra Def.'s Mot. at 1. Its counsel in an affidavit explained that the receivers had not yet signed an assignment of their rights to Forest Glen because the "receivership was terminated and its civil action concluded by the Cuyahoga County, Ohio Common Pleas Court several years ago," but that Mr. Marein was "presently attempting to reopen that receivership action for the sole purpose of obtaining that Court's authority to sign the Assignment." Rossi Aff. ¶¶ 5-6. On February 9, 2007, Forest Glen submitted an affidavit from Dr. Frederick D. Harris (its managing member), signed two days earlier, which stated that "[p]er the attached Assignment" it was "assignee of all right, title and interest in [the] Renewal Contract and derivative Renewal Offer." Harris Aff. ¶ 5. The attached, undated[1] assignment was signed by Messrs. Bradley and Marein as "former" receivers, and read: "For valuable consideration, the undersigned hereby transfer, set over and assign, to Forest Glen Properties, LLC, all of our right, title and interest in and to the attached Housing Assistance Payments Renewal Contract." Attach. to Harris Aff. at 1. The renewal contract and the January 14, 2000 renewal offer were attached to the assignment. *Id*. at 2-6.

The Court denied the government's motion, as HUD's renewal of the HAP contract with the receivers rendered the prior written approval clause ambiguous and its interpretation was found to be too intertwined with the merits to be the subject of a separate proceeding. *Forest Glen*, 79 Fed. Cl. at 679-81. The Court also found the provision to be a promise not to assign rather than a pre-condition for valid assignment, *id*. at 682-83, and determined that sufficient evidence was identified to support an implied-in-fact contract based on the second offer, the existence of which was also too intertwined with the merits to be decided at that time. *Id*. at 683-85. Whether or not an assignment occurred prior to the filing of the lawsuit was not an issue raised by the government's initial motion. *See id*. at 683.

---

[1] The place for the date on the assignment, apparently reflecting the time it was drafted, contained the month of September, a blank space for the date, and the year 2006. *See* Attach. to Harris Aff. at 1. A cover letter addressed to plaintiff's counsel indicates that the assignment was executed on or by January 31, 2007. *See* Exs. to Pls.' Resp. to Def.'s Prop. Findings ("Pls.' Ex."), Ex. L at 1.

On March 5, 2008, Forest Glen moved for leave to amend the complaint to add the former receivers as plaintiffs. The Court granted the motion on June 19, 2008, allowing the joinder to relate back to the date the complaint was originally filed. *See* Order (June 19, 2008) at 1-2. That same day, the Cuyahoga County Court of Common Pleas issued an order "to reopen the receivership for the limited purpose of permitting their passive participation as nominal parties in" this matter. Def.'s App. at 143. The amended complaint, adding Messrs. Marein and Bradley as plaintiffs in their capacities as receivers, was also filed that day.

After fact discovery was reopened and the government was able to obtain information from the receivers, the defendant filed the pending motion. It argues, among other things, that Forest Glen had no contractual relationship with HUD and thus no standing to sue at the time the complaint was filed,[2] and that the subsequent purported assignment and joinder of the receivers occurred after the statute of limitations period would have expired. *See* Def.'s Renewed Mot. at 15-16, 19 n.10, 30-34. After a careful consideration of the evidence submitted and arguments of the parties, the Court has concluded that the government is correct on these particular points.

As concerns Forest Glen, in the original complaint it alleged it was assigned contract rights by the receivers, Compl. at 1-2, but it subsequently conceded that the assignment was accomplished through a written document that was apparently signed in January 2007, *see* Pls.' Ex. L at 1, and submitted to the Court on February 9, 2007. *See* Harris Aff. ¶ 5 & Attach.[3] Forest Glen bears the burden of establishing jurisdiction over its claims. *See McNutt v. GMAC*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv*., 846 F.2d 746, 748 (Fed. Cir. 1988). It has not provided any basis for concluding that the claims it has asserted for payments under the renewal contract which ran from September 14, 1999 through January 13, 2000, and under an alleged renewal contract running from January 14, 2000 through April 14, 2000 (or May 14, 2000),[4] would have accrued as late as January, 2001.

Regarding the renewal contract that began September 14, 1999, correspondence from HUD dated June 12, 2000, indicated that if the receivers would provide a tax identification number ("TIN"), their payments request would be processed. Pls.' Ex. H; Def.'s App. at 123. Plaintiffs take the position that the relevant TIN had already been provided by February 11, 2000. *See* Pls.' Resp. to Def.'s Prop. Findings No. 60; Pls.' Ex. E. Accordingly, any claim that

---

[2] For jurisdictional purposes, standing to sue must be possessed at the time a complaint is filed. *See Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003).

[3] Plaintiffs' counsel explained that the formal assignment was made in response to the government's initial motion to dismiss, and that Forest Glen believed it could sue as real party in interest after the receivers were approached about bringing a lawsuit to collect the HAP contract payments and declined. *See* Tr. (July 9, 2009) at 11-13.

[4] The complaint alleges that the second renewal contract ran through April 14, 2000, *see* Am. Compl. at 2, but the 120-day term that was offered would have run through May 14, 2000. *See* Attach. 2 to *id*.

the HAP renewal contract was breached by HUD's failure to pay the rent subsidies owed to the receivers would have accrued on or by June 12, 2000. *See Kinsey v. United States*, 852 F.2d 556, 557 (Fed. Cir. 1988) (citing *Oceanic S.S. Co. v. United States*, 165 Ct. Cl. 217, 225 (1964)). The same information would have been needed for any payments under the alleged second renewal contract, which would have expired no later than 29 days prior to the June 12, 2000 letter.[5] A claim for payments owed under any second renewal contract would thus also have accrued on or by the date of that letter. Even if the Court assumes that Messrs. Marein and Bradley possessed some interest in the claims for payments as "former" receivers in January 2007 when the claims were purportedly assigned, the six-year period of limitations, 28 U.S.C. § 2501, would have already expired.[6] Since by that time it was too late for the receivers to bring their own lawsuit to recover on the claims, no claims remained to be assigned.[7]

The Court had previously entertained the possibility that an assignment of the second alleged renewal contract, and thus any claims to damages under it, could have occurred by operation of law if the receivership terminated while the contract was still in force. *See Forest Glen*¸ 79 Fed. Cl. at 681. But the receivers were appointed "to establish and maintain escrow of any and all funds related to Lakeview Gardens from whatever source derived pending the disposition of [the Ohio state court] case." Def.'s App. at 35. The Ohio matter was pending until May 23, 2002, when it was dismissed without prejudice, *id.* at 126, and thus the receivership outlasted the alleged second renewal contract. Thus, even under the theory raised earlier by the Court, the alleged second renewal contract would not have been assigned to Forest Glen by operation of law.

The final issue to be considered concerns the ability of the receivers to litigate the claims on their own behalf.[8] While the Court allowed the joinder of Messrs. Bradley and Marein to relate back to the September 16, 2005 date the initial complaint was filed, *see* Order (June 19,

---

[5] The Court notes that, inconsistent with the existence of the second renewal contract, no contemporaneous documentation has been identified containing (or even acknowledging) a request for rent payments for the period covered by this alleged contract.

[6] The January 31, 2007 cover letter from Mr. Marein to plaintiffs' counsel, which accompanied the assignment, referenced a telephone conference with the Ohio state judge "who has authorized our signatures." Pls.' Ex. L at 1; *but see* Ex. 1 to Def.'s Resp. to Pls.' Prop. Findings at 9 (docket sheet for Ohio proceeding lacking an entry reflecting such authorization).

[7] Even a purportedly retroactive assignment of the claims would not have been sufficient to provide Forest Glen with standing to bring the lawsuit. *See Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996).

[8] The plaintiffs acknowledge that an unjust enrichment claim, previously withdrawn from the case, *see Forest Glen*, 79 Fed. Cl. at 671 n.2, was "inadvertently included" in the amended complaint, and remains "abandoned." Pls.' Mem. Contra Def.'s Renewed Mot. at 6.

2008), by that date the receivership had already been terminated.[9] As was discussed above, the receivership existed during the pendency of Solo Ventures' case in the Cuyahoga County Court of Common Pleas, which was dismissed on May 23, 2002. *See* Def.'s App. at 126. Plaintiffs' counsel acknowledged in a document filed January 17, 2007, that the "receivership was terminated . . . several years ago," Rossi Aff. ¶ 5, and the Ohio state court "reopened" the receivership on June 19, 2008, for the limited purpose of allowing Messrs. Bradley and Marein's "passive participation as nominal parties" in this case. Def.'s App. at 143; *see also* Ex. 1 to Def.'s Resp. to Pls.' Prop. Findings at 9. Consistent with a May 2002 termination of the receivership, when the receivers applied to the Cuyahoga County Court of Common Pleas for reimbursement of their expenses on February 23, 2005, their application stated they had been "waiting over three (3) years for compensation and reimbursement of expenses," Def.'s App. at 128, and included an exhibit itemizing billable time with a final entry dated December 12, 2001. *Id*. at 136. Because the receivership was "expressly limited when established," *Milo v. Curtis*, 100 Ohio App. 3d 1, 6 (Ohio App. 1994), to exercise authority "pending the disposition" of the lawsuit brought by Solo Ventures, Def.'s App. at 34-35, the dismissal of that lawsuit necessarily terminated the receivership.[10]

The HAP renewal contract identifies Messrs. Bradley and Marein as each being a "court appointed Receiver," and was signed by Mr. Marein in his capacity as receiver. *See* Def.'s App. at 97-98. The offer of a second renewal contract was also made to Mr. Bradley "[a]s the Receiver for Lakeview Gardens." *Id.* at 111. Plaintiffs have failed to show that Messrs. Bradley and Marein would have had any interest in such contracts other than through the receivership, which was not in existence on the date the complaint was filed. Even were they named as plaintiffs, in their capacities as receivers, in the initial complaint, the Court would not have been able to exercise jurisdiction over their claims --- as they could not have such capacities as a matter of law if the receivership itself were no longer in existence. Put another way, their standing derived from their positions as receivers, and could not exist if the receivership did not exist. Thus, even though the participation of Messrs. Bradley and Marein in this lawsuit may relate back to the date of initial filing, the fact that the receivership was closed at the time precludes them from having standing to litigate the receivership's claims.

---

[9] The motion for leave to amend the complaint, and the order granting it, referenced Messrs. Bradley and Marein as *former* receivers, *see* Pl.'s Mot. for Leave to Amend at 1; Order (June 19, 2008) at 1-2, and the latter contained no determination as to whether those individuals would have had the capacity to litigate the matter as of the date the initial complaint was filed.

[10] The plaintiffs argue that the written notes on the dismissal order that the "[r]eceivers remain unpaid by HUD" and that the "Court retains jurisdiction on all matters related to this case," Def.'s App. at 126; Pls.' Ex. J; *see also* Ex. 1 to Def.'s Resp. to Pls.' Prop. Findings at 9, had the effect of keeping the receivership open. Pls.' Mem. Contra Def.'s Renewed Mot. at 5. But the state court judge's retention of jurisdiction over ancillary matters does not change the *disposition* of the case as one which had been dismissed, and the plaintiffs' argument cannot be squared with the state court's order *reopening* the receivership.

As was discussed above, by the time that the Cuyahoga County Court of Common Pleas had reopened the receivership to authorize participation in this lawsuit, the six-year limitations periods on the claims would have expired. Unlike a previous order issued by the state court, *see* Def.'s App. at 148-49, the order reopening the receivership was not issued *nunc pro tunc*. *See id*. at 143. The plaintiffs have cited no legal authority supporting the ability of an Ohio receivership to bring litigation after it had been terminated, or providing that the reopening of a receivership has retroactive effect. *Cf. Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1307-09 (Fed. Cir. 2003) (discussing Florida corporation law authorizing post-dissolution lawsuits and relating reinstatement back to the date of dissolution). If Forest Glen believed that the receivers had neglected to collect money from HUD to which it was ultimately entitled, it should have taken the efforts necessary to reopen the receivership for purposes of litigation or assignment prior to the expiration of the limitations period. This it failed to do.

For the reasons described above, the Court concludes that Forest Glen had not been assigned the claims that are the subject of this lawsuit prior to filing the lawsuit, or prior to the expiration of the limitations period; and that the receivership did not exist at the time the lawsuit was filed, and was reopened after the limitations period expired. The government's motion to dismiss the case for lack of subject-matter jurisdiction is thus **GRANTED**, and its motion in the alternative for summary judgment is **DENIED-AS-MOOT**. The Clerk shall close the case.

**IT IS SO ORDERED.**

s/ Victor J. Wolski

**VICTOR J. WOLSKI**
Judge